284 So.2d 650 (1973)
Allen CELESTINE, Plaintiff-Appellant,
v.
LAFAYETTE PARISH SCHOOL BOARD, Defendant-Appellee.
No. 4242.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1973.
*651 Murphy Bell, Baton Rouge, for plaintiff-appellant.
Ronald Dauterive, Asst. Dist. Atty., Lafayette, for defendant-appellee.
Before HOOD, CULPEPPER and MILLER, JJ.
HOOD, Judge.
Allen Celestine instituted this action for judgment ordering that he be re-instated as a classroom teacher in the Lafayette Parish School System as of March 17, 1970 the date he was dismissed, with all of the emoluments and benefits of that employment. The defendant is the Lafayette Parish School Board. The trial judge rendered judgment in favor of the defendant School Board, dismissing plaintiff's suit. Plaintiff has appealed.
The issues are whether the evidence is sufficient to support the School Board's finding that plaintiff is incompetent, whether defendant acted arbitrarily or unreasonably in dismissing plaintiff, and whether plaintiff has been denied due process of law.
On March 16, 1970, plaintiff Celestine was serving as a fifth grade teacher in the N. P. Moss Elementary School in Lafayette Parish, pursuant to a contract of employment previously entered into between him and the Lafayette Parish School Board. He had been working as a classroom teacher for defendant for eleven years prior to that date, and he thus was a "permanent teacher," within the meaning of LSA-R.S. 17:442.
*652 Shortly after his class reconvened following the noon lunch period on the above mentioned date, plaintiff was confronted by several students who told him that two of his girl students had been using "bad words." Plaintiff thereupon asked the two girls in the presence of other members of the class whether they had been using vulgar language, and when they responded that they had, he instructed each of them to write the vulgar word 1,000 times and to turn that work in to the principal for his signature, and to their parents for their signatures. One of the two girls to whom this assignment was given was eleven years of age at that time.
Pursuant to the instructions given to them by plaintiff, each of these girls began writing a four letter word, beginning with the letter "F," being an extremely vulgar word meaning sexual intercourse. They spent the rest of that day carrying out the assignment of writing that word 1,000 times. One of them, the above mentioned eleven year old girl, finished about the time the rest of the class was dismissed for the day, and she turned in her paper to the plaintiff. Celestine then ordered her to take the paper to the principal, Robert Landry, for his signature, and she complied with that order. The other student who had been given the same type punishment did not finish her assignment that afternoon and the record indicates that she has never been required to complete it.
On the following day, March 17, the principal of the school met with plaintiff Celestine, the Parish Superintendent of Schools, the Parish Director of Elementary Schools, and two School Board members to discuss the incident. Plaintiff also conferred privately with the Parish Superintendent of Schools later that afternoon. On that day, March 17, the Superintendent of Schools for Lafayette Parish wrote a letter to plaintiff informing him that he was being suspended indefinitely from duty, without pay, effective March 17, 1970. In that letter the Superintendent also offered plaintiff the option of resigning or of facing a recommendation of the Superintendent that he be dismissed for incompetency. Plaintiff refused to resign, and the Superintendent thereupon formally charged plaintiff with incompetency, and he recommended to the School Board that plaintiff be dismissed on the basis of that charge. The Superintendent specified in his recommendation that his charge of incompetency was based on the above mentioned incident.
A copy of the written charge was furnished to plaintiff, and he was formally notified by registered mail of the date and place scheduled for a hearing before the School Board and of his right to a public or private hearing. A full public hearing was held by the School Board at the time scheduled for it, and at the conclusion of that hearing the School Board, by unanimous vote, formally dismissed plaintiff as a teacher in the Lafayette Parish School System. Plaintiff then instituted this suit.
Plaintiff contends, first, that he did not assign the "word" which was written by the two girl students. He testified that after his students informed him that the two girls had been using bad words, he asked the girls shortly after the class reconvened if they had used vulgar language again, and when they admitted that they had he instructed each of them to write the vulgar word they had used 500 times. The one who completed the assignment testified that she was instructed to write the word 1,000 times, and the record shows that she did write it that many times. Celestine maintains that he did not ask and did not know what the word was until after the assignment had been completed by one student and her paper on which the word had been written many times had been handed to him.
The girl who finished the assignment testified that immediately before the punishment was imposed the word which she wrote 1000 times was spelled out to the plaintiff by another student in the classroom, and that although it was spelled in a low voice, she could hear it easily while *653 sitting on the second or third row of seats in that class. Plaintiff does not deny that a student spelled the word for him before he gave the assignment, but he stated that if the student spelled it he didn't hear it. He concedes that he used poor judgment in giving that type punishment to a pupil, and that he would not require his own child to write the word which these two young girls wrote.
The evidence shows that the two students who were subjected to this punishment spent the rest of the day writing this vulgar word in the classroom in the presence of the other students, while classes were being conducted in the same room. At least some of the other students knew the word which was being written, because one of them testified that another student had told her what it was while the assignment was being carried out.
We do not feel that plaintiff's unawareness of the exact word which he required the girls to write relieves him of the responsibility of having assigned that specific word to them. According to his own testimony, he knew that he was requiring them to write a vulgar word. If he did not know or bother to inquire as to what the word was, then the assignment by chance could have involved a word which was even more vulgar than the one actually used in this instance, if such a word exists.
We can understand how upsetting the type of punishment administered by plaintiff in this instance may have been to the parents of all of the children in that school. We will not speculate as to the effect which such a punishment may have on the children who were given this assignment, or on the other pupils in the class, but it at least is conceivable that the effect would be harmful to them and to the school.
When there is a rational basis for an administrative board's discretionary determinations which are supported by substantial evidence insofar as factually required, the Court has no right to substitute its judgment for the administrative board's or to interfere with the latter's bona fide exercise of its discretion. Chantlin v. Acadia Parish School Board, 100 So.2d 908 (La.App. 1 Cir. 1958); Lewing v. DeSoto Parish School Board, 238 La. 43, 113 So.2d 462 (1959); State ex rel. Rathe v. Jefferson Parish School Board, 206 La. 317, 19 So.2d 153 (1943); Frank v. St. Landry Parish School Board, 225 So.2d 62 (La. App. 3 Cir. 1969); Granderson v. Orleans Parish School Board, 216 So.2d 643 (La. App. 4 Cir. 1968).
Our Supreme Court said in Rathe v. Jefferson Parish School Board, supra, that:
"There is nothing more firmly established in law than the principle that, within the limits of their authority, the power and discretion of legally created governing boards is supreme. Their wisdom or good judgment cannot be questioned by the courts. Members of these boards are appointed or elected because of their peculiar fitness for the post. Judges are elected because of their legal knowledge and ability. They are not experienced in the business affairs of Parishes and municipalities, * * * or the conduct of a public school system. A presumption of legality and regularity attaches to the action of all government boards. It is only when it is clearly shown that the action of such a board is beyond its authority or is arbitrary, unreasonable, or fraudulent that a court is justified in interfering."
In Stewart v. East Baton Rouge Parish School Board, 251 So.2d 487 (La.App. 1 Cir. 1971), the Court said:
"Our courts have consistently held that the hearing body is the trier of fact, and the courts will not review the evidence before such agency, except to determine whether the action of the agency was; (1) in accordance with the authority and formalities of the statute; (2) supported by substantial evidence; and (3) arbitrary or an abuse of discretion, and, except *654 for those purposes, court will not review wisdom, reasoning or judgment of administrative agencies."
In the instant suit, all of the formalities required by law have been observed, and the charges of incompetency made by the Parish Superintendent of Schools are supported by substantial evidence. We agree with the trial court that the defendant School Board was not arbitrary or unreasonable, and that it did not abuse its discretion in dismissing plaintiff.
Plaintiff contends, however, that the action of the School Board should be set aside because it deprives him of his rights under the due process of law clauses of the State and Federal Constitutions. He assigns two grounds which he feels supports that contention.
He pointed out, first, that the School Board have never forbidden teachers from requiring students to write words as a method of disciplining them, and that the School Superintendent had "accepted in principle" this form of discipline. He argues that the School Board has "violated out concept of fair play which is embodied in the due process clauses" by dismissing plaintiff on the grounds that he used a form of discipline which had been accepted and had not been forbidden.
It is true that neither the School Board nor the Superintendent had ever forbidden teachers from using the form of punishment described by plaintiff. Celestine, however, was not dismissed because of the form or method of disciplining students which he used. He was dismissed because of his extremely poor judgment in requiring an eleven year old girl to write a very vulgar word many times, particularly in the presence of the other members of the class. It was the bad judgment, or the incompetency, of the teacher in requiring that a vulgar word be used which brought about his dismissal. It was not merely his selection of a form or method of punishment. We thus find no merit to plaintiff's argument that he has been denied due process because of the form of punishment which he used.
The second ground urged by plaintiff to support his argument that he has been deprived of due process of law, is that the School Board considered evidence as to other acts of misconduct allegedly committed by plaintiff, which acts were not included in the charges of incompetency made against him and were not specified in the notice which was given to him of the charges.
At the hearing the child who was required to write the vulgar word testified that plaintiff told her at the time this punishment was imposed that he was going to mark her absent for that day. Plaintiff denied that he made any such statement or marked her absent, and he testified that if his records show her to be absent on that day then someone else had made entries to that effect on them. In connection with that testimony, plaintiff admitted that he had kept his classroom key and his records for three or four weeks after he had been suspended, and that he did not return them to the School Board until after the Board had threatened legal action to get them. Plaintiff contends that these acts were considered by the School Board in its determination that he should be dismissed, although they were not specified in the charges or in the notice which was given to him.
There is nothing in the record which indicates that either the School Board or the Trial Court considered these circumstances in determining that plaintiff was incompetent. Even if they should have considered them, we find them to be so inconsequential that they could have had no effect on the decision which was rendered.
The testimony of the above mentioned student that Celestine had told her that he was going to mark her absent for the day on which the punishment was given *655 was incidental to the giving of the assignment which is in question here, and we think it was proper for all of the evidence relating to that punishment to be produced and considered. Plaintiff denied that he made any such statement to her or that he marked her absent, and the evidence apparently supports his statement because the evidence does not show that the class records were ever marked to show her absent. That evidence thus could not have prejudiced plaintiff's right in this proceeding.
The incident relating to the return of the classroom key and the class records occurred after the dismissal had been recommended. The evidence as to that incident was elicited from plaintiff on cross-examination merely to explain his earlier statement that a school official had threatened him with legal proceedings. We think the School Board was entitled to ask for that explanation under the circumstances, and that there was nothing improper or prejudicial to plaintiff in the admission of that evidence.
The case of Johns v. Jefferson Davis Parish School Board, 154 So.2d 581 (La. App. 3 Cir. 1963), relied on by plaintiff, does not support plaintiff's position here. In that case the dismissed teacher was found guilty of willful neglect of duty and incompetence in several particulars not included in the formal notice which had been sent to him. In the instant suit plaintiff has been found to be incompetent solely on the charge which was specifically set out in the notice which he received.
Plaintiff contends, finally, that his right to academic freedom as a teacher is protected by the First Amendment to the Federal Constitution, and that this right entitles him to administer the punishment which was administered to the two young girls in his class. He relies on Keefe v. Geanakos, 418 F.2d 359 (1 Cir. 1969), which involved the use of a much less offensive word in teaching high school students. The court held, in effect, that the use of the word involved there, under those circumstances, would not justify dismissal of the teacher. The court also stated, however, that:
"We of course agree with defendants that what is to be said or read to students is not to be determined by obscenity standards for adult consumption. . . . Furthermore, as in all other instances, the offensiveness of language and the particular propriety or impropriety is dependent on the circumstances of the utterance.
"We accept the conclusion of the court below that `some measure of public regulation of classroom speech is inherent in every provision of public education.'"
We do not believe that the right of academic freedom entitles a public school teacher to require his students, particularly very young people, to use and be exposed to vulgar words, particularly when no academic or educational purpose can possibly be served. In the instant suit, we agree with the School Board and the trial court that plaintiff did not have the right, under the principle of academic freedom or any other theory, to require an eleven year old girl to write the very vulgar word which was involved here even once, when no valid purpose conceivably could be served by the use of that word. He certainly had no right to require her to write such a word many times in the presence of her classmates. His very poor judgment in imposing such a requirement is sufficient to support the action of the School Board in dismissing him.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.