381 So.2d 1278 (1980)
Police Officer Ronald J. CANNATELLA and Police Officer Howard P. Robertson
v.
CITY CIVIL SERVICE COMMISSION OF the CITY OF NEW ORLEANS.
No. 10961.
Court of Appeal of Louisiana, Fourth Circuit.
February 22, 1980.
Writ Refused May 9, 1980.
*1279 Law Offices, Sidney M. Bach, Gerald D. Wasserman, New Orleans, for Officers Cannatella and Robertson, plaintiffs-appellees.
Ralph D. Dwyer, Jr., Many, LoCoco & Dwyer, New Orleans, for City Civil Service Commission of the City of New Orleans, defendant-appellants.
Before SAMUEL, BOUTALL and GARRISON, JJ.
BOUTALL, Judge.
Two police officers of the City of New Orleans brought a petition for injunctive and/or declaratory relief against the Civil Service Commission complaining of unfair scoring on a promotional examination for the rank of Police Sergeant, and praying that the regulation for computing scores be changed and that they be ordered to be promoted. The trial court rendered judgment in their favor, and the Commission has appealed.
Ronald J. Cannatella and Howard P. Robertson were initially enrolled in the Police Department of the City of New Orleans under a program which permitted persons under 20 years old to be enrolled as a "police cadet". This program was initiated with a view to enabling the police to recruit younger members of the community and interest them in a police career prior to the established age requirement of 20 years for enrollment as a regular policeman. Both successfully completed their service as police cadets and were enrolled as patrolmen at the age of 20 years. Thereafter they continued to serve for a number of years and took a promotional examination in November, 1976 to qualify on the promotional list for advancement to the rank of Police Sergeant. The applicants were ranked according to a weighted formula which considered both the score made on the test as well as a score for length of time in grade. Robertson received a score of 73.54 and was ranked 138 on the promotion list, Cannatella received a score of 74.55 and was placed 115th. The basis of their suit is that neither was granted any credit for time in service as a police cadet, and that had such credit been granted under the formula used in computing the score, that each would have been advanced up the promotional list, and would have been by now promoted to sergeant.
The first problem that is presented is the nature of the relief sought and granted in the trial court's judgment. The petition sought both injunctive and declaratory relief. The judgment rendered decreed "that a permanent writ of injunction issue *1280 herein, as prayed for, according to law, and that the declaratory relief prayed for herein be granted." On its face, that judgment is contrary to the requirements of Code of Civil Procedure Article 3605 which requires an injunction order to "describe in reasonable detail, and not by mere reference to the petition or other documents, the act or acts sought to be restrained." See for comparison Allied Navigation Company, Inc. v. International Organization of Masters, Mates and Pilots, 272 So.2d 23 (La.App. 4th Cir. 1973) and Van Vrancken v. Roy, 296 So.2d 460 (La.App. 4th Cir. 1974). The judgment appealed is a final injunction, but it is ineffective because of its insufficiency in describing the act sought to be restrained. If the appealed judgment was composed entirely of injunctive relief, we would remand this matter back to the trial court for further proceedings. However, we still have before us the issue of the declaratory relief, and we are informed in argument that the effective date of the promotional list will soon expire.
Petitioners prayed for the following declaratory relief: To declare legally void and unreasonable the rule whereby the Commission refuses to give the police officers any credit for time and service as police cadets, for rating on the promotional examination, to recognize them as qualified for promotion to the rank of police sergeant; and order them to be promoted retroactive to the time they would have been qualified for and promoted to the rank of police sergeant.
Although the trial judge in his reasons for judgment and statements from the bench does not indicate that his decree would encompass such far ranging relief, nevertheless, his decree, is controlling of the relief granted.
The primary issue is the legality and fairness of the requirements of the promotional examination. The Louisiana Constitution of 1974 in Article 10 sets up a system of Civil Service generally, and Sections 7 and 10 grant the City Civil Service Commission the authority to make and adopt rules for regulating employment and promotion and for the method of certifying persons eligible for appointment and promotion. In the City of New Orleans, Rule 5 § 2.4 imposes upon the Director of the Department of Civil Service the duty to fix the requirements and qualifications. The general rule is that the reasonable discretion of administrative boards will not be set aside in the absence of proof of an abuse of such discretion. Toye Bros. Yellow Cab Company v. City of New Orleans, 264 So.2d 768 (La.App. 4th Cir. 1972.) The courts should not interfere with the bona fide judgment of such a board based upon substantial evidence. State ex rel. Rathe v. Jefferson Parish School Board, 206 La. 317, 19 So.2d 153 (La.1943); Celestine v. Lafayette Parish School Board, 284 So.2d 650 (La.App. 3rd Cir. 1973). The decision cannot be considered arbitrary unless the setting was made without reasons or reference to relevant considerations. Arbitrariness is the absence of a rationale basis. Graffeo v. City of New Orleans, 351 So.2d 1311 (La.App. 4th Cir. 1977). We are of the opinion that the trial judge erred in not applying these basic rules, but instead substituted his opinion for that of the Civil Service Commission and its Director.
In its announcement relating to the promotional examination for police sergeant, the Director, approved by the Commission, made certain experience rating requirements. The announcement set minimum requirements which were three years of service in the police class and stated the police classes were: Police Officer, Police Woman and Desk Sergeant. The Commission then offered a further explanation of the rating of experience by granting credits up to a maximum of 10 years with a weight of two points for the class of Desk Sergeant and a weight of one point for each year as a police patrolman, police officer or policewoman, to be computed on a weighted basis according to a formula. No credit was granted for service as a police cadet, and it is this point which these two officers, who were formerly cadets, contest.
The evidence shows that the class of police cadet was started in 1967 as a method *1281 of attracting young men in their late teens, between the ages of 17 and 20 to serve as cadets until they could achieve the age of 20, at which time they would be appointed as police patrolmen provided they had kept up with the qualifications of the program. These young men were to enter a training class in which each would be an employee and receive instructions, orientations and training to prepare him for work as a police patrolman, both by on the job training in various offices and bureaus and by entering into the college curriculum at Loyola University leading to a degree in criminology. It was recognized at that time that this new class of police cadet would be different from that of police patrolman (to which he could be promoted after his 20th birthday) in that the cadet did not receive a police commission, that he could not carry a gun, nor did he have the arrest powers of a regular policeman. A cadet's work assignment consisted partly of on the job training and partly of pursuing the college curriculum. There is evidence in the record which shows that in certain of these job functions, the cadet did substantially the same duties as did a police patrolman, however, this showing is made only in several instances, and not in the overall duties generally engaged in by policemen.
The trial judge found that the duties of a cadet were approximately the same as the duties and responsibilities of a police recruit or probationary officer. The evidence shows however that the classification of police recruits was not begun until after the promotional announcement had been promulgated, and after the classification of police cadet had been dropped and the program terminated. During the existence of the cadet program, there was no classification of police known as police recruit, but these were simply police officers who upon being commissioned were given training in the police academy. The evidence offered by the defendant Commission shows that there was a rational consideration of the establishment of these police classes and the requirements for each. This evidence is not directly disputed, it being contended only that the cadet did similar duties in practice. It is this juxtaposition of the evidence that leads us to conclude that the decision of the trial court is a substitution of his judgment for that of the Commission.
Accordingly, we are of the opinion that the judgment appealed is in error and we reverse it. The remaining issues as to the ordering of these officers' retroactive appointment as desk sergeant necessarily fall with our determination that we see no arbitrary classification by the Civil Service Commission. Nevertheless, we feel constrained to point out that there is no evidence in the record which would show how the other candidates would fare under the new credits sought to be granted by the trial court, nor could it be guaranteed that these plaintiffs would have been appointed. See Blake v. Giarrusso, 263 So.2d 392 (La.App. 4th Cir. 1972).
The judgment appealed from is reversed and there is now judgment in favor of defendants, dismissing plaintiffs' demands at their cost.
REVERSED AND RENDERED.
GULOTTA, J., concurring with CHEHARDY, J., joining.
GARRISON, J., dissenting.
GULOTTA, Judge, concurring.
I concur.
Although I am not in agreement with the conclusion reached by the Civil Service Commission that cadets should not be given credit, I cannot say that the action by the Commission is unreasonable, arbitrary or capricious. The record does show a minimal degree of difference between a cadet on the one hand, and a recruit or patrolman on the other. A cadet was enlisted at the age of 18 years and was sent to a university for the purpose of pursuing a criminology degree. While at the university apparently, he was assigned to various departments for the purpose of gaining on the job training and experience. He was not permitted to carry a gun; he had no authority to make arrests; and, was assigned to these departments for in training educational purposes. *1282 Although he was paid less salary than a recruit or patrolman was paid, he did get a Bachelor of Arts degree in criminology.
A recruit, on the other hand, was required to be 20 years of age, did not pursue a university program in criminology, received a higher pay, attended the police academy, where after completing a training program, became a patrolman. The record is not clear as to whether or not he carried a firearm, however, it appears that after he completed the required firearm training he was permitted to carry a firearm (since he had attained the age of 20 years), although he had not become a patrolman.
Because of the minimal differences between a recruit and a cadet, I cannot say the action of the Civil Service Commission was arbitrary, capricious or unreasonable.
GARRISON, Judge, dissenting and assigning reasons.
I dissent from the majority's reversal of the judgment of the trial court.
The issue before us concerns the application of standards by reviewing bodies. With regard to the City Civil Service Commission, an administrative body, its governing standard with regard to evaluating cases which come before it for decisionwith regard to the promulgation of its policies and with regard to its subsequent actionsis that it act reasonably, which is to say not arbitrarily nor capriciously.
On the other hand, the governing standard of this Court of Appealwith regard to a district court case which comes before it for reviewis represented by the test as to whether or not the court below did or did not commit manifest error. Cantor v. Koehring, Co., 283 So.2d 716 (La., 1973); Arceneaux v. Domingue, 365 So.2d 1330 (La., 1978).
The precise question before this court, then, was whether or not the trial judge below committed manifest error in his judgment that the administrative agencywhose hearing it reviewedacted in a manner (to quote from Judge Connolly's judgment) which was: "arbitrarily and capricious, unreasonable and discriminatory." (Emphasis added.)
While these respective standardsours for the review of the trial court's decision and the judge's for the review of the administrative agencymay appear to be essentially parallel, they are not, nevertheless, identical standards. This may be emphasized by reversingfor the sake of argumentthe evaluative standards of the trial court and the administrative body. It was not, for example, our precise task simply to determine whether or not the judge acted capriciously or arbitrarily any more than was it his precise task to determine whether or not the Civil Service Commission had committed manifest error.
It is respectfully submitted that whatever standard the majority applied to its review of the City Civil Service Commission's actions, it was not that of manifest error. More specifically, to employ the phrase of our mandate in the Arceneaux case, there was no basis for the majority's conclusion that Judge Connolly's finding of fact was "clearly wrong." (Emphasis supplied.) The trial court's Reasons for Judgment (which I adopt by reference and make a part hereof)[1] when considered against the background of the record, make it clear that in his recitation of the law, his interpretation of the facts and his application of the law to the factswhile some may disagree with his conclusion even as others agreethere is no sound basis for concluding that he was clearly wrong with regard to his conclusion. Therefore, in my judgment, our mandate required that we not disturb his factual finding with regard to the declaratory judgment sought by plaintiff.
I do not disagree with the majority's denial of injunctive relief, for the reasons stated in its opinion, but I would affirm the trial court's declaratory judgment.[2]
*1283 And, in further accord with that conclusion, I would grant the retroactive benefits prayed for by petitioners and prevented by the Civil Service Commission, including any promotion earned, any back pay which additionally would have been earned and any other benefits which would have been acquired by plaintiffs were my view to represent the majority.
 APPENDIX A
 Civil District Court for the Parish of Orleans
 State of Louisiana
No. 79-6514 Division J Docket No. 5
 Police Officer Ronald J. Cannatella
 and Police Officer Howard P. Robertson
 vs
 City Civil Service Commission of The
 City of New Orleans

REASONS FOR JUDGMENT
This matter was heard on May 11, 1979. Plaintiffs petitioned the Court for injunctive and/or declaratory relief regarding the refusal of the defendant, City Civil Service Commission to allow the plaintiff police officers any credit for their time-in-service while in the employ of the City of New Orleans Police Department as police cadets. Plaintiffs contend that, but for the defendant, Commission's refusal to grant them credit for "time-in-service" within the Police Department during their employ as police cadets, plaintiffs would not have been passed over for promotion by others who had actually less time than they as police employees in the City of New Orleans Police Department.
The City of New Orleans Civil Service Commission is the duly authorized body to promulgate rules and regulations for the orderly administration of the City Civil Service Department, including the New Orleans Police Department.
It is a basic principle of law that all rules and policies of any administrative body must be reasonable, i. e., not arbitrary and capricious.
The "policy" of not allowing any credit for time served as a Police Cadet does not meet the basic standards of reasonableness. The testimony adduced at the trial on the merits indicates that although Police Cadets were not licensed to carry firearms, they were in all other respects police officers, both in their appearance and dress, and their assignments and responsibilities. This is not to say they were full-fledged Police Patrolmen. Their scope and characterizations were the same as Police Recruits and other Police Trainees who did receive credit for time-in-service for purposes of the Police Sergeant Examination.
Even though the "policy" was allegedly not based on Agethe only distinction between a Police Recruit and a Cadet was age, that is, a Recruit was recruited at age 20 years, and a Cadet was allowed to enter the Department at the completion of high school (17-18-19 years of age).
It is noted that at Age 20 years, the Police Cadet was neither given additional physical, mental nor psychological tests and was administratively promoted to Police Patrolman upon reaching 20 years of age.
The testimony supports the contention that Police Cadets did substantially the same work and duties of other probationary police officers, such as Police Recruits. Recruits were given full credit for time served as probationary police officers. It would necessarily follow that Police Cadets should be recognized as a class of Police Officer and receive similar credits for time-in-service for the "Sergeant's Examination". 40% of the total grade on this examination is calculated on time-in-service. This is an important consideration. Therefore, time served as a Police Cadet could conceivably make a substantial difference in a police officer's ranking on the Sergeant's list.
The failure of the Civil Service Commission to grant credit for time-in-service had the effect of denying the full benefits of this career oriented program, which had for *1284 its purpose the recruitment and integration of young police officers who could not ordinarily qualify for police service, because of lack of age requirement, into the Department of Police.
The testimony reflects that Police Cadets were given full recognition for purposes of Police Pension and Tenure, whereas the Police Cadets were denied any recognition of time-in-service for purposes of the "Sergeant's Examination". This policy has the effect of arbitrarily and capriciously denying Police Cadets the same rights and seniority enjoyed by other Police Officers; and in the Court's opinion there is no reasonable basis for this distinction, insofar as the difference between a Police Cadet's responsibilities and duties and that of a Police Recruit or other probationary police officer is negligible.
The Court should refrain and is mandated from precipitously substituting its decision for that of a duly authorized Commission. However, the Court cannot condone a policy which is, in addition to being arbitrary and capricious, unreasonable and discriminatory in its application to those people who were actively recruited as Police Cadets and who are required to take promotional examinations, where time-in-service is an important factor, in order to further their "career" as a member of the New Orleans Police Department.
 /s/ George C. Connolly, Jr.
 JUDGE
New Orleans, La.
May 14, 1979
 State of Louisiana
 Civil District Court for the Parish of Orleans
No. 79-6514 Division "J" Docket # 5
 Police Officer Ronald J. Cannatella
 and Police Officer Howard P. Robertson
 vs
 City Civil Service Commission of the
 City of New Orleans

JUDGMENT
This cause came on this day for trial on petition for injunctive relief filed May 2, 1979.
Present: Sidney M. Bach, attorney for plaintiff
Ralph D. Dwyer, attorney for defendant
When, after hearing the pleadings, evidence and stipulation by and between counsel and for the written reasons to be filed and made part of the record;
IT IS ORDERED, ADJUDGED AND DECREED that a permanent writ of injunction issue herein, as prayed for, according to law, and that the declaratory relief prayed for herein be granted.
JUDGMENT READ, RENDERED AND SIGNED IN OPEN COURT MAY 11, 1979
 /s/ George C. Connolly, Jr.
 JUDGE
NOTES
[1] See Appendix A.
[2] It should be noted that this case is essentially sui generis, in the sense that the New Orleans Police Department no longer has "cadets." The point, of course, is that the issue in this case, in any event, would remain one confined to this sole case and does not constitute one from which any "ripple" effect, broadening out into the Department, should be anticipated.