**HARRISON–WASHINGTON COMMUNITY SCHOOL CORPORATION; Paul Parker, Superintendent, Harrison-Washington Community School Corporation; William L. Ritchie, President, Harrison-Washington Community School Corporation Board of Trustees; James Mauck, Benny Benefiel, Gordon Carter, and Donald Sayre, Members of Harrison-Washington Community School Corporation Board of Trustees, Appellants (Defendants Below),**

v.

**Willis D. BALES, Appellee (Plaintiff Below).**

**No. 2–1281A414.**

Court of Appeals of Indiana, Second District.

June 29, 1983.

Rehearing Denied July 28, 1983.

Robert W. Rund, Indianapolis, Joseph B. Davis, Raymond A. Brassart, Muncie, for appellants.

Richard W. Reed, Alexander & Reed, Muncie, for appellee.

SULLIVAN, Judge.

Harrison-Washington School Corporation, et al. (Board) appeals the trial court's mandate of July 27, 1981 ordering the Board to reinstate Willis D. Bales (Bales) as a tenured teacher with the school corporation. We reverse.

We construe appellants' arguments to present five versions of the same issue: whether the trial court erred in finding that the Board's decision to cancel Bales' indefinite contract was not substantiated by the evidence, and in mandating the reinstatement of Bales as a tenured teacher.

On March 13, 1981, Bales was notified by the Board that it would conduct a hearing on April 16, 1981 to consider the termination of his indefinite contract, and that he would be afforded all the rights of a tenured teacher under I.C. 20–6.1–4–11. On March 17, 1981, Bales, through his attorney, requested a written statement of the reasons for his possible termination. In a let-

ter dated March 23, 1981, the Board apprised Bales that his possible termination was based partially on these grounds:

"1. *Neglect of Duty*

a. That Mr. Willis D. Bales has failed to keep and have control of his classroom and maintain proper discipline therein during class periods;

b. That Mr. Willis D. Bales has failed to make proper class preparation, to carry into effect, fulfill and accomplish the duties of an elementary school teacher;

c. Mr. Willis D. Bales' failure to follow administrative direction in the method of teaching and grading of students and his failure to improve his teaching methods after administrative conferences;

d. Sleeping during classroom period.

2. *Incompetency*

a. In that Mr. Willis D. Bales has failed to keep and have control of his classroom and maintain proper discipline therein during class periods;

b. That Mr. Willis D. Bales has failed to make proper class preparation, to carry into effect, fulfill and accomplish the duties of an elementary school teacher;

c. Mr. Willis D. Bales' failure to properly instruct and teach elementary students in such a manner as to prepare them for higher grade education;

d. Failure to follow methods regularly used for teaching elementary students;

e. Not adequately preparing class lesson before the commencement of the class.

3. *Other Good and Just Cause*

a. Failing to communicate and take an interest in the students of his class."

Record at 220–21.

Mr. Bales was also informed that he would have an opportunity to be heard and to present evidence at the hearing.

At the April 16 hearing, the school principal, Mr. Jon Hatcher, to whom the responsibility of evaluating the teachers' performance has been delegated, testified. Mr. Hatcher has observed Bales throughout his six years as a member of the teaching staff. During this period, Mr. Hatcher had provided Bales with a formal written evaluation each year. Most of these evaluations were done after Mr. Hatcher had observed Bales in the classroom. Mr. Hatcher's normal procedure was to observe each teacher at least once a year, but preferably on several occasions, and to have conferences during which he and the teacher would discuss the evaluation and the "job targets" which the teacher is advised to follow in order to achieve improvement.

In Bales' 1976 evaluation, he was advised that he lacked teaching plans and objectives, that he needed to be more enthusiastic and supportive of his students, and to develop a rapport with them. Mr. Hatcher also indicated that Bales should exercise more discipline over his students.

In 1977 Mr. Hatcher criticized Bales for continually lecturing his fourth grade students, not tailoring his teaching to their level of understanding, and not interacting well with them. According to Mr. Hatcher, Bales was not improving on the job targets.

Hatcher's 1978 evaluation indicated that Bales' deteriorating performance provoked "quite a bit" of criticism from parents, staff members, and students. The main criticism came from the parents who complained that he was boring the children. Some parents even went as far as to ask that their children be transferred out of Mr. Bales' class. Partly to alleviate this problem, Hatcher instituted a departmentalized system whereby different teachers would teach different subjects; thus, the students would not be limited to one teacher for the entire day of classes. Apparently, criticism decreased somewhat after the school adopted this system.

In 1979, Bales was again advised to improve his discipline of the students: "the students appear to have become disinterested and disrespectful. You must insist that the students follow the simple rules of order and respect. If they do not, discipline must be personal and precise. Do not 'yell' at the class or the student. Isolate the

offender. Corporal punishment may be necessary."

In the 1980 evaluation period, Hatcher again suggested that Bales prepare more plans and objectives, to abandon his method of lecturing behind his desk, to get the students "involved in their education," to give the students more work to do and to wield greater control over the class. Hatcher noted that the students are "resistant, lack self-control, and cause many minor disruptions."

By May 1980, Hatcher felt that the "situation had deteriorated to the point that he was becoming ineffective with the children." Without objection, Hatcher testified:

"I told him what I had on evaluation and I told him what I just told you, and he said he agreed that he was, he had a terrible year. After he made that statement I said probably a resignation may be in order ... some words to that effect. He said teaching was killing him, he said the students were not disciplined like they used to be. He was having a hard time with that." Record at 36.

Hatcher also testified that during the year before cancellation, he had been observing Bales in his classroom at least once a day, and on one instance noticed that Bales appeared to be sleeping during class before he was awakened by a student. At another time, Bales' students had been sent back from physical education class because they were there at the wrong time and upon their return to their classroom, found Bales gone. He was later found in the furnace room asleep. On another occasion, Bales was discovered asleep in the teacher's lounge at a time when he was scheduled to meet with Hatcher to discuss a student.

Mr. Hatcher also encountered much parental criticism of Bales' grading methods. Apparently, Bales' practice of evaluating his students on the basis of one or two tests for a six-week grading period did not comply with the school policy of evaluating the students "constantly, but formally, once a week in all subjects."

On August 28, 1980, Bales was warned by Paul L. Parker, the superintendent, that unless he made a significant improvement in the following, his contract would be cancelled:

"1. classroom discipline and control
2. movement in and about the classroom during discussion
3. preparation and implementation of lesson plans
4. a significant increase in discussion lessons with a similar decrease of lecture methods."

Record at 214.

Following the April 16, 1981 hearing and upon the superintendent's recommendation, the Board entered findings and conclusions culminating in its decision to terminate Bales' contract at the end of the 1980–81 school year.

Upon Bales' verified complaint for declaratory judgment and writ of mandamus, the trial court overturned the Board's decision and ordered the Board to reinstate Bales as a tenured teacher. The court found, *inter alia*, that "the evidence submitted at said hearing, on the 16th day of April, 1981, failed to substantiate any of the stated reasons for dismissal of Plaintiff from the employ of defendants."

Indiana's Teacher Tenure Act, I.C. 20–6.-1–4–10 (Burns Supp.1982) sets forth the grounds upon which a school board may cancel a teacher's indefinite contract:

"(a) An indefinite contract with a permanent teacher may be canceled in the manner specified in section 11 [20–6.1–4–11] of this chapter for only the following grounds:

(1) immorality;

(2) insubordination, which means a wilful refusal to obey the state school laws or reasonable rules prescribed for the government of the school corporation;

(3) neglect of duty;

(4) incompetency;

(5) justifiable decrease in the number of teaching positions; or

(6) other good and just cause.

When the cause of cancellation is ground (1) or (2), the cancellation is effective immediately. When the cause of cancellation is ground (3), (4), (5), or (6), the cancellation is effective at the end of the school term following the cancellation.

(b) An indefinite contract may not be canceled for political or personal reasons."

The procedure which the school corporation must employ in cancelling such contract is provided in I.C. 20–6.1–4–11 (Burns Supp. 1982):

"(a) An indefinite contract with a permanent or semi-permanent teacher may be cancelled only in the following manner:

(1) The teacher shall be notified in writing of the date, time, and place for the consideration by the school corporation of the cancellation of the contract; this notification must occur not more than forty [40] days nor less than thirty [30] days before the consideration;

(2) The teacher shall be furnished, within five [5] days after a written request, a written statement of the reasons for the consideration;

(3) The teacher may file a written request for a hearing within fifteen [15] days after receipt of the notice of this consideration;

(4) when the request for a hearing is filed, the teacher shall be given a hearing before the governing body on a day no earlier than five [5] days after filing;

(5) the teacher shall be given not less than five [5] days' notice of the time and place of the hearing;

(6) at the hearing, the teacher is entitled:

(A) to a full statement of the reasons for the proposed cancellation of the contract; and

(B) to be heard, to present the testimony of witnesses and other evidence bearing on the reasons for the proposed cancellation of the contract;

(7) a contract may not be canceled until:

(A) the date set for consideration of the cancellation of the contract;

(B) after a hearing is held, if a hearing is requested by the teacher; and

(C) the superintendent has given his recommendations on the contract; on five [5] days' written notice to him by the school corporation, the superintendent shall present his recommendation on each contract, except on a superintendent's contract;

(8) pending a decision on the cancellation of a teacher's contract, the teacher may be suspended from duty; and

(9) after complying with section 10 [20–6.1–4–10] of this chapter in the case of permanent teachers, or section 10.5 [20–6.1–4–10.5] of this chapter in the case of semi-permanent teachers, and this section, the governing body of the school corporation may cancel an indefinite contract with a teacher by a majority vote evidenced by a signed statement in the minutes of the board; the decision of the governing board is final."

 Bales alleges for the first time on appeal that he was denied procedural due process by the Board's failure to honor his request for a more detailed statement of the reasons for his termination. We observe that although an appellee may assert grounds in support of the trial court's judgment for the first time on appeal (Ind.Rules of Trial Procedure, Trial Rule 59(G)), Bales failed to include this specific allegation in his verified complaint and writ of mandamus to the trial court. Our review is limited to the trial court's judgment and to the record before it. *See Linville v. Shelby County Plan Commission* (1972) 258 Ind. 467, 281 N.E.2d 884. In any case, we conclude that the Board, in its letter to Bales dated March 23, 1981, provided him with a sufficiently detailed statement of the reasons for cancellation so as to afford him adequate notice prior to the April 16 hearing.

 Bales further argues that the Board did not make "specific" findings of fact to support its decision and cites *Newton v. Board of School Trustees of the Metropoli-*

*tan School District of Wabash County* (3d Dist.1980) Ind.App., 404 N.E.2d 47. In *Newton,* the court held that in considering evidence against a teacher during a cancellation proceeding, the board was acting as an administrative body, and as such, it was required to make written findings even in the absence of a specific requirement to do so under the Teacher's Tenure Act. The board there found merely that "the reasons given by the staff" had been proved. Here, the Board entered written findings and conclusions, and incorporated Hatcher's evaluations of Bales from 1976 to 1981 as part of its transcribed record. The Board's transcribed findings were stated with particularity and specificity sufficient for the court to review the agency's decision. *See Connell v. City of Logansport* (1st Dist.1979) Ind.App., 397 N.E.2d 1058.

We next address Bales' contention that the Board's determination that he was incompetent was contrary to law because there was no evidence that he was *mentally* incompetent. He urges us to construe the word incompetency to mean "the onset of mental disease or serious physical impairment which prohibits continued performance by the teacher." Appellee's Brief at 30. No authority is cited for such a limited interpretation. We cannot agree that it was the legislature's intent to permit a school board to dismiss a tenured teacher for incompetence only if such teacher was so mentally diseased that the appointment of a guardian for such teacher might be necessary. We agree with the court in *Biggs v. School City of Mt. Vernon* (1909) 45 Ind.App. 572, 80 N.E.2d 105, that a teacher, "wanting in practical efficiency and discipline" may be considered by the board to be incompetent.

We now focus on whether the trial court's action in overturning the Board's decision was proper. Our Supreme Court in *Stiver v. State* (1936) 211 Ind. 380, 1 N.E.2d 1006, 1007, enunciated the scope of judicial review of an administrative body's determination:

> "An action of mandate by a teacher to compel the rescission of an order of cancellation of a contract and the reinstatement of the teacher *does not afford a review* of the *weight and effect* of the *evidence* upon which the administrative decision is based. If the procedural requirements are followed, including the assignment of a legal cause for cancellation, and if there is substantial evidence which tends to support the legal cause, and if the hearing is, in fact, fair, the proceeding is lawful; and the discretion of the administrative officer or board cannot be review by a court." (emphasis added).

The record shows that the Board notified Bales of his possible cancellation 34 days before the hearing. Upon his request, he was provided with a written statement of the reasons for the consideration before the hearing. Bales, through his attorney, was present at the hearing, was given the opportunity to cross-examine the Board's witnesses, to testify and to present testimony of other witnesses and other relevant evidence. The Board's cancellation of Bales' contract occurred only after the superintendent, upon written notice to him by the school corporation, had given his recommendation. The Board's reasons for cancellation—incompetency, neglect of duty and other good and just cause—were all statutorily authorized reasons for cancellation of a teacher's indefinite contract. Under the facts, we find that the manner in which the Board terminated Bales' contract conformed with the statute.

Moreover, the record reveals that the Board's decision was justified by substantial evidence. The uncontradicted testimony of Hatcher indicates that Bales was often unprepared to teach class, that he was unable to maintain discipline over the students, and that he failed to improve his performance according to the job targets. There was evidence that Bales slept during class and during scheduled conferences. There was also testimony indicating that Bales' grading methods were deficient. The Board's findings of incompetency, neglect of duty, and other good and just cause were corroborated by substantial evidence.

Where the proceedings of the administrative body comport with the statutory mandate, the decision is supported by substantial evidence, and where the decision does not constitute a gross abuse of discretion, such decision is rendered final under the statute. *See Phillippe v. Axe* (1942) 219 Ind. 328, 38 N.E.2d 341; *Stiver v. State, supra; Lost Creek School Township, Vigo County v. York* (1939) 215 Ind. 636, 648, 21 N.E.2d 58.

A reviewing court must defer to administrative findings of fact and to the agency's expert conclusion; the court should not usurp the agency's function and overturn its decision merely because the court itself might have drawn different conclusions. *Indiana State Highway Commission v. Indiana Civil Rights Commission* (2d Dist.1981) Ind.App., 424 N.E.2d 1024, 1034. In this case, the trial court erroneously reweighed the evidence and substituted its own conclusion for that of the Board's. Judgment reversed.

BUCHANAN, C.J., and SHIELDS, J., concur.