Alayne FISCUS, Appellant,

v.

BOARD OF SCHOOL TRUSTEES OF CENTRAL SCHOOL DISTRICT OF GREENE COUNTY, Indiana, Appellee.

No. 53A01–8610–CV–272.

Court of Appeals of Indiana, First District.

July 8, 1987.

Rehearing Denied Aug. 21, 1987.

Lewellyn H. Pratt, Bloomington, for appellant.

Robert E. Cambridge, Bloomington, for appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Appellant, Alayne Fiscus (Fiscus), was a permanent teacher formerly employed by the Central School District of Greene County (School District). Fiscus appeals the judgment of the Monroe Superior Court, which upheld the Board of School Trustees of the Central School District of Greene County (School Board) in its decision to cancel her contract on the basis of immorality.

We affirm.

## STATEMENT OF THE FACTS

Fiscus had been employed by the School District as a permanent teacher under an indefinite contract, and she taught art, physical education, and library skills in the elementary school. As far as the transcript shows, she had an unblemished record in her 12 years of experience. Fiscus was accused of immorality because of the single utterance of an obscenity during a 5th-grade art class, whereupon she was suspended pending a hearing.

At the hearing, held before the School Board with School District Superintendent Knoll acting as the prosecutor, the following evidence was presented. Out of a class of 24 children, six, aged either 10 or 11 years, testified they had heard the obscene remark. At the hearing, all six were asked the same leading question: "Did you hear Mrs. Fiscus say, 'Fuck you'?" M.B., the center of this controversy, in answer to the question responded, "Uh-huh." *Record* at 208 (Plaintiff's Ex. No. 1 at 6). M.B. stated that he had asked Fiscus what grade he had received on an Easter cross art project. Fiscus responded with the obscene phrase, followed by "C-." *Record* at 208 (Plaintiff's Ex. No. 1 at 8). M.B. had never heard Fiscus use profane or obscene language before. M.B. admitted he did not like Fiscus because she erroneously blamed him for "stuff", and often assigned him extra work as punishment. *Record* at 208 (Plaintiff's Ex. No. 1 at 10.) M.B. had specifically looked at the clock when Fiscus uttered the remark because he anticipated that it would be relevant in an investigation. M.B.'s mother testified that Fiscus previously had given M.B. a "D" in physical education. When she learned of Fiscus's remark, she complained to the principal, Sandra Headley, and demanded that something be done. M.B.'s mother also stated that the incident had had a terrible effect on her son: when he sees Fiscus or a vehicle resembling her truck he panics; he had suffered from diarrhea; and he had lost weight. M.B.'s mother did admit that her son talks too much, characterizing him as a "blabbermouth," and she related that he had once accused Fiscus of falling asleep during a physical education class. *Record* at 208 (Plaintiff's Ex. No. 1 at 14). Like M.B., S.B. responded affirmatively to the leading question. However, he stated that the remark was not made in answer to a question, nor was it directed to anyone in particular; Fiscus just stood in the middle of the class and blurted it out. S.B. also did not care for Fiscus because she "always got on us for doing nothing."

*Record* at 208 (Plaintiff's Ex. No. 1 at 21). Another student, A.C., heard the obscene word, but said that Fiscus said nothing either before or after it. He testified that during the remainder of the class the students whispered among themselves concerning the incident. A.C. also related that earlier in the school year he had been in the company of two classmates, C.B. and J.B., while they wrote the identical phrase with their fingers in the dust on Fiscus's truck. A.C. denied participating in this activity. In her testimony, Headley stated that C.B. and J.B. had been paddled for this and had been compelled to write Fiscus a note of apology. It is apparent that the entire class was aware of the truck-writing episode. E.G. also answered affirmatively to the leading question, but stated he did not hear M.B. ask Fiscus a question. D.R. testified he heard the entire conversation. A.D., who also corroborated M.B., was also a witness to the truck-writing episode, but he too denied participating.

After Fiscus completed class and left, and the regular classroom teacher, Mrs. Goodman, returned, M.B. and three others immediately told her what had transpired. Mrs. Goodman sent them to Headley's office, and Headley conducted an investigation the next day. The results of that investigation revealed that, excepting the above students, the class had not heard the verbal exchange between M.B. and Fiscus. Headley testified she had known Fiscus for seven years and had never heard her use obscene language, either publicly or privately. Other long-time acquaintances of Fiscus testified in a similar vein. In her testimony Fiscus vehemently denied the charges, and added that immediately prior to the alleged conversation she had threatened to send M.B. either out into the hall or to Headley's office if he did not get quiet and get into his seat.

On May 23, 1984, the School Board, having found that Fiscus uttered the remark, canceled her indefinite contract on the basis of immorality. In its Findings of Fact and Conclusions of Law the School Board determined that:

"4. This profanity in the classroom is a detriment to the school and is an inappropriate model to the students.

5. The teacher's effectiveness in teaching is damaged by her use of the profanity.

6. Conduct of the teacher in use of profanity under these circumstances violates the standard of conduct expected of a teacher in the elementary school and considering the age, the in-class use of language in direct response to a student inquiry, profanity served no educational purpose and damaged the students and the teacher's effectiveness."

*Record* at 61.

On September 27, 1984, Fiscus filed a complaint in the Monroe Superior Court. Fiscus alleged that her contract had been wrongfully canceled, in that her immorality had not been proven by the evidence and that the School Board had arbitrarily limited the number of witnesses that were allowed to testify on her behalf.

A bench trial was held on April 24, 1986. Fiscus argued that the evidence was not sufficient to show that she had spoken the phrase in question, that even if she had done so a single utterance could not constitute "immorality," and that she was denied due process because the School Board prevented eight of her character witnesses from testifying and, since the School Board does not have subpoena power, she could not procure the attendance of students as witnesses at the hearing. Without a subpoena, the students' parents preferred not to have their children involved in the matter. Fiscus and the School Board did stipulate that seven students, several of whom were in close proximity to Fiscus at the time of the utterance, had stated in depositions that they did not hear the remark.

The School District responded that the trial court could not disturb the School Board's factual determination that Fiscus had spoken the phrase, and that there had been sufficient evidence that the phrase violated community standards and was therefore "immoral." The School Board also denied that Fiscus's penalty was excessive.

The trial court entered its judgment on July 21, 1986. It found that the pertinent

statutory procedures had been followed by the School District, that sufficient evidence existed to show that Fiscus had uttered the remark, that the School Board had not abused its discretion in limiting Fiscus to three character witnesses, and that, since Fiscus never asked the School District for assistance in compelling the attendance of students at the hearing, there was no violation of due process. Although the trial court had "reservations concerning the utilized process and the end result," it concluded it was "compelled by legal principles to uphold the [School Board's] decision." *Record* at 194. The trial court entered judgment for the School District, but did express its reservations in doing so:

> "The Court cannot help but express some sympathy for [Fiscus's] circumstances. As noted in open Court at the conclusion of the hearing, it seems inexplicably odd that some students much closer to [Fiscus] at the time in question allegedly failed to hear the offending phrase, whereas some students further away allegedly did clearly hear the attention-grabbing, shocking statement. In view of the past difficulties of [Fiscus] with some of the students and her historical conduct and comportment, one may be inclined to suspect some misunderstanding of the words allegedly uttered which make little sense in the circumstances and the context of the moment.
>
> And the Court cannot help but note that the hearing was 'prosecuted' by [Knoll], a person with whom [Fiscus] had some conflicts and a person who investigated the charges. Furthermore, the aura of power which attaches to the School Board logically imbues its requests to parents that their children appear to testify in such a proceeding with more persuasiveness than a similar request from a responding teacher who may be perceived, due to the charges, as one with whom one should not identify too closely, lest one's children receive adverse fallout."

*Record* at 194.

## ISSUES

Fiscus presents the following issues for our review. She claims the trial court erred in failing to find that the School Board abused its discretion:

I. In finding that Fiscus did in fact utter the remark;

II. In concluding that Fiscus's utterance constituted immorality;

III. In that the penalty for the utterance was too severe.

## DISCUSSION AND DECISION

### ISSUE I: *Factual Finding*

 Fiscus claims the School Board's finding that she uttered the remark is not supported by substantial evidence.

A trial court's review of an administrative decision is limited to a determination of whether the board's action was arbitrary, capricious, an abuse of discretion, not in accordance with the law, or unsupported by substantial evidence. In determining whether an administrative decision is supported by substantial evidence, the trial court must examine the whole record to determine whether the board's decision lacks a reasonably sound basis of evidentiary support. *Metropolitan School District of Martinsville v. Mason* (1983), Ind.App., 451 N.E.2d 349, *trans. denied*. Like the trial court, our duty is to review the administrative proceedings to see that the board's decision is supported by substantial evidence, that it is not arbitrary and capricious, and that the board has complied with all relevant rules of law and procedure. *Id.* Judicial review of an administrative body's determination does not include a review of the weight and effect of the evidence upon which the administrative decision is based. *Harrison-Washington Community School Corp. v. Bales* (1983), Ind.App., 450 N.E.2d 559.

We have recited with specificity the evidence that was presented at the school board hearing. The School Board chose to believe that a mature grade-school teacher with 12 years of experience and an unblemished record would stand in the middle of her 5th-grade art class and mindlessly utter a barracks-room obscenity in response

to a student's question concerning his grade. The possible motives of the students to prevaricate, such as discontent with grades, scoldings, the writing of the obscenity on Fiscus's truck, and the resulting punishment of their friends, did not dissuade the School Board. While we, like the trial court, have grave misgivings regarding the justice of this matter, we acknowledge that we were not present at the proceedings. Again, under our standard of review we may not weigh the evidence nor adjudge the credibility of the witnesses, even if we might have drawn a different conclusion. *Bales, supra.* The issue is simply whether the School Board believed the students or the teacher. It believed the students, and we hold the evidence is sufficient.

ISSUE II: *Immorality*

Fiscus contends the single utterance of the phrase cannot constitute immorality and justify the cancellation of her indefinite contract.

Fiscus was a permanent teacher under an indefinite contract, as defined by IND. CODE 20–6.1–4–9. As such, her contract could be canceled only for cause. IND. CODE 20–6.1–4–10 provides the grounds and the time of cancellation:

"(a) An indefinite contract with a permanent teacher may be canceled in the manner specified in section 11 [20–6.1–4–11] of this chapter for only the following grounds:

(1) immorality;

(2) insubordination, which means a wilful refusal to obey the state school laws or reasonable rules prescribed for the government of the school corporation;

(3) neglect of duty;

(4) incompetency;

(5) justifiable decrease in the number of teaching positions; or

(6) other good and just cause.

When the cause of cancellation is ground (1) or (2), the cancellation is effective immediately. When the cause of cancellation is ground (3), (4), (5), or (6), the cancellation is effective at the end of the school term following the cancellation.

(b) An indefinite contract may not be canceled for political or personal reasons."

An arbitrary and capricious act is one which is willful and unreasonable, without consideration and in disregard of facts or circumstances in the case; the act is one without some basis which would lead a reasonable person to the same conclusion. *City of Greenwood v. Dowler* (1986), Ind. App., 492 N.E.2d 1081.

Although the charges that were leveled against Fiscus included immorality, insubordination, and other good and just cause (which the School District defined as "a lack of cooperation and a hostile attitude," and "improper and inconsistent grading practices"), Fiscus's contract was canceled solely on the basis of immorality. *Record* at 234. The School Board defined immorality as conduct that "violates the exemplary standards to which teachers are held and/or when it offends the moral standards of the community and impedes the teacher's effectiveness in the school." *Record* at 208 (Plaintiff's Ex. No. 1 at 2). Although the trial court considered this definition broad in scope, it did not find the interpretation to be arbitrary.

■ To date, no Indiana case has provided a definitional standard of what constitutes immorality by a teacher, but a definition provided by the Pennsylvania Supreme Court has been oft-cited. In *Horosko v. Mount Pleasant Township School District* (1939), 335 Pa. 369, 372, 6 A.2d 866, 868, *cert. denied*, 308 U.S. 553, 60 S.Ct. 101, 84 L.Ed. 465 (1939), the court defined immorality as "not essentially confined to a deviation from sex morality; it may be such a course of conduct as offends the morals of the community and is a bad example to the youth whose ideals a teacher is supposed to foster and to elevate." Obviously, disputes arising under such a general concept, which is subject to varying interpretations based on shifting social attitudes, must be resolved on the facts and circumstances of each case. *Clarke v. Bd. of Education of*

*School District of Omaha* (1983), 215 Neb. 250, 338 N.W.2d 272.

■ Although we have found no Indiana cases upholding the cancellation of a teacher's contract because of the in-school use of offensive language, courts of other jurisdictions have done so: *see Palo Verde Unified School District of Riverside County v. Hensey* (1970), 9 Cal.App.3d 967, 88 Cal. Rptr. 570 (teacher's use of vulgar language and gestures); *Pyle v. Washington County School Board* (1970), Fla.App., 238 So.2d 121 (teacher made sexually suggestive remarks to students); *Celestine v. Lafayette Parish School Board* (1973), La.App., 284 So.2d 650 (teacher had two students write vulgar word 1,000 times as punishment for saying it); *Resetar v. State Board of Education* (1979), 284 Md. 537, 399 A.2d 225 (teacher's use of racial epithet); *Clarke, supra* (teacher's use of racial epithet); *Bovino v. Board of School Directors* (1977), 32 Pa.Commonwealth 105, 377 A.2d 1284 (teacher called female student a "slut" and a "prostitute"); *Pryse v. Yakima School District No. 7* (1981), 30 Wash.App. 16, 632 P.2d 60 (teacher made sexually suggestive remarks to students). *But see Mailloux v. Kiley* (D.C.Mass.1971), 323 F.Supp. 1387; *Central York School District v. Ehrhart* (1978), 36 Pa.Commonwealth 278, 387 A.2d 1006 (no teacher immorality found where use of vulgar language was for educational purposes).

Given the above holdings, and the facts that the phrase was uttered during class but not for educational purposes, we do not believe the School Board abused its discretion in concluding that Fiscus's conduct constituted immorality.

## ISSUE III: *Severity of Penalty*

■ Fiscus argues that, even if she concedes that she uttered the remark and it constitutes immorality, the penalty, cancellation of her indefinite contract, is so severe as to be an abuse of discretion.

In *New Albany v. Whiteman* (1968), 250 Ind. 333, 234 N.E.2d 646, the supreme court held that a court, absent a finding

1. A school board hearing a charge against a permanent teacher is an administrative body.

supported by evidence of an arbitrary and capricious ruling by an administrative board, may not modify or otherwise change the punishment meted out by the administrative board. To do so would be to substitute the court's judgment for that of the administrative body. Having held that the School Board's ruling was neither arbitrary nor capricious, we can not now invade its discretion regarding the penalty.

For the above reasons, the judgment of the trial court is in all things affirmed.

Judgment affirmed.

RATLIFF, C.J., concurs with opinion.

CONOVER, P.J., dissents with opinion.

RATLIFF, Chief Judge, concurring.

In reviewing the decision of an administrative agency,[1] our duty is two-fold. First, we must determine if the agency's findings support its decision, and, if so, our second determination is whether the evidence before the agency supports its findings. In making these determinations, we always must keep in mind that the agency is the trier of fact, and we may not reweigh the evidence, judge the credibility of witnesses, or substitute our judgment for that of the agency. *Holloway v. Madison-Grant United School Corporation* (1983), Ind.App., 448 N.E.2d 27; *Metropolitan School District of Martinsville v. Mason* (1983), Ind.App., 451 N.E.2d 349, *trans. denied.*

In this case, if the teacher made the offending statement, the board, as the majority opinion holds, was justified in dismissing her. The board heard the evidence and found that in fact the teacher made the statement. Evidence before the board supports that finding. Under such circumstances, it was inappropriate for the trial judge to comment upon the weight or credibility of the evidence, and it is equally inappropriate for us to express any skepticism as to the proof, or to question the wisdom of the board's decision, for such clearly is not our function.

*Scott County School District No. 2 v. Dietrich* (1986), Ind.App., 496 N.E.2d 91.

Subject to the one exception which I have noted, I concur in the majority opinion. That opinion squarely adheres to our standard of review and properly applies that standard. The board's findings support its decision, and the evidence supports its findings. We need say no more.

CONOVER, Presiding Judge, dissenting.

I respectfully dissent. It is readily apparent from this record Fiscus was denied substantive due process of law at her hearing before the school board.

A. *Due Process*

Our state and federal constitutions require as a minimum standard in any hearing whether before a court or an administrative body that a party whose interests are to be effected thereby be afforded fundamental due process of law. The constitutional guarantee of "due process" is one of broad and comprehensive implications, not readily definable with precision, but including the elements of reasonable notice, opportunity for *a fair hearing*, and the right to have a court of competent jurisdiction determine whether a finding is supported by substantial evidence having probative value. *Warren v. Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N.E.2d 399, 409. When rights are so effected that an individual is likely to suffer a grievous loss, due process mandates that minimum procedural safeguards be insured. *Dunn v. Jenkins* (1978), 268 Ind. 478, 377 N.E.2d 868, 876. In the absence of statute or prior interpretation, due process dictates essential fairness rather than detailed enumeration of procedures to be employed. *Jenkins v. Harvey* (1977), 174 Ind.App. 67, 367 N.E.2d 1, 2. It is always the duty of trial courts and courts on appeal to see that fundamental rights of due process are not improperly denied. *Kaiser Aluminum & Chemical Sales, Inc. v. Dickerhoff* (1964), 136 Ind. App. 258, 199 N.E.2d 719, 721. For due process requirements to be satisfied, there must be a fair opportunity to be heard before the matter is finally determined. *Town of Walkerton v. New York, C. & St. L.R. Co.* (1939), 215 Ind. 206, 18 N.E.2d 799, 803, cert den'd, 308 U.S. 556, 60 S.Ct. 75, 84 L.Ed. 467.

Here, Fiscus's prosecution was carried on by the obviously biased superintendent of schools. While that fact alone did not constitute a denial of due process, a combination of functions in the administrative body is not per se a violation of due process, *Guide v. City of Marion* (1972), 151 Ind.App. 435, 280 N.E.2d 81, 85, the constitution requires the hearing to be a fair one before a tribunal which meets at least currently prevailing standards of impartiality. *Guido*, 280 N.E.2d at 84–85. Whether or not the superintendent brought Fiscus's prosecution to satisfy a personal passion against Fiscus the record does not reveal. What it does reveal is a mockery of justice.

It is obvious from this record all the students who testified at the hearing carried a grudge against this teacher, most because she chastised them for writing obscenities on her van in the dust. Next, although there were some 20 students in the classroom at the time of the incident in question, some of whom were closer to Fiscus at the time than those who testified, only the seven with grudges appeared to testify. Finally, these 10 to 11 year old children were interrogated by the authority figure of a school superintendent who used blatantly leading questions on the prime issue being considered by the school board. These young witnesses' answers consisted of nothing but "uh-hums" and gutteral grunts of affirmance as to whether Fiscus uttered the obscene remark of which she was accused. Those techniques and responses rendered the entire proceeding a mockery of justice and a clear denial of due process. In sum, it was the prosecution testifying, not its young and immature witnesses.

A leading question is one that suggests to the witness the answer desired. *Goodman v. State* (1985), Ind., 479 N.E.2d 513, 515. The rule against leading questions is intended to prevent the substitution of the prosecutor's language for the thought of the witness as to the material facts in dispute. *Webster v. State* (1934), 206 Ind. 431, 190 N.E. 52, 54. While leading ques-

tions on direct examination may be proper where the witness is a young child or a weak-minded adult, such questions must be carefully phrased to elicit coherent testimony and so as not to control the substance of such witness's testimony. *Ingram v. State* (1984), Ind.App., 463 N.E.2d 483, 485. It is readily apparent no attempt at careful phrasing was made by the prosecuting superintendent. The testimony thus elicited was tainted because it was substantially the testimony of the prosecutor, not the witnesses on a material issue. Because it is tainted, such testimony does not have probative value.

The factfinding process should be free of suspicion or the appearance of impropriety. *City of Mishawaka v. Stewart* (1974), 261 Ind. 670, 310 N.E.2d 65, 69. Clearly, the factfinding here is not. For these reasons it is clear Fiscus was denied fundamental due process of law. That being so, the proceedings before the school board at issue here are a nullity, in my opinion.

I would reverse, order Fiscus reinstated and made whole as of the date of her discharge.