[Civ. No. 9452. Fourth Dist., Div. Two. July 24, 1970.]

PALO VERDE UNIFIED SCHOOL DISTRICT OF RIVERSIDE
COUNTY, Plaintiff and Respondent, v.
WILLIAM HENSEY, Defendant and Appellant.

968

**COUNSEL**

Ronald G. Skipper for Defendant and Appellant.

Ray T. Sullivan, Jr., County Counsel, James H. Angell, Assistant County Counsel, and W. W. Miller, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**GARDNER, P. J.**—This is an appeal from a judgment permitting plaintiff to dismiss defendant and to terminate his employment as a permanent teacher in the Palo Verde Unified School District where he taught on a junior college level. The action was brought pursuant to sections 13412 and 13403 of the Education Code charging evident unfitness for service and immoral conduct.

Under well established rules of appellate review, there was substantial evidence to sustain the following findings by the trial court:

(1) That during a class session in the presence of students, defendant removed from its fixture a loud speaker which was an integral part of the fire alarm and bell system and stated to the president of the college that he would remove it again if it were replaced as well as stating to him that he had removed a similar facility from another of the classrooms.

(2) That the defendant stated the bell system of the college "sounded like a worn out phonograph in a whorehouse" and made numerous references during the semester to "whore" and "whorehouses" and, following a reprimand for this conduct, submitted to the president of the college a thesis on the justification of his use of these terms in his class.

(3) That he directed himself to several Mexican-American students seated in the rear of the classroom and stated, "I understand you have been to San Luis; I understand they have super-syphilis there, and you know that they don't have drugs to cure that. Be careful when you're there." This statement was made in a tone loud enough to be heard by all of the students in the class, both male and female.

(4) That the defendant advised his philosophy class that the district superintendent could be a good superintendent "but he spends too much time . . . (at this point in the statement he stepped over to the wall and simulated licking the wall with his tongue in an up and down manner and then continued speaking) . . . licking up the Board."

(5) That the defendant derogatorily referred to the walls of the high school and on one occasion he referred to them as looking as though "someone had peed on them and then smeared them with baby crap."

(6) The trial court further found that the sounds emanating from the fire alarm and bell system were annoying to some of the students and some of the teachers during the period of time the system was being adjusted and utilized as signifying commencement and termination of classes throughout the junior college classroom building which was new. However, the trial court found that it was not true that said sounds emanating from the fire alarm and bell system were such as to justify the defendant's actions in tearing the loud speaker out.

From these facts the trial court determined that the charges of evident unfitness for service and immoral conduct were true and constituted sufficient grounds for dismissal.

As there is substantial evidence to support the trial court's findings of these facts, we are bound to accept them in this review. (*Board of Trustees* v. *Porini*, 263 Cal.App.2d 784 [70 Cal.Rptr. 73].)

However, the defendant contends that, conceding the validity of the finding of the trial court as to the above probative facts, nevertheless, its finding that the charges of evident unfitness for service and immoral conduct were true is erroneous as a matter of law.

As a general background, we recognize the guidelines as to the role of the teacher as established by the Supreme Court in the case of *Board of Education* v. *Swan*, 41 Cal.2d 546 [261 P.2d 261], cert. den. 347 U.S. 937 [98 L.Ed. 1087, 74 S.Ct. 627], wherein at pages 552-554, the court stated: "A teacher . . . in the public school system is regarded by the public and pupils in the light of an exemplar, whose words and actions are likely to be followed by the children coming under her care and protection. [Citation.]

In this connection the following language used in *Johnson* v. *Taft School Dist.,* 19 Cal.App.2d 405, at page 408 [65 P.2d 912], is pertinent: 'A board of education is entrusted with the conduct of the schools under its jurisdiction, their standards of education, and the moral, mental and physical welfare of the pupils during school hours. An important part of the education of any child is the instilling of a proper respect for authority and obedience to necessary discipline. Lessons are learned from example as well as from precept. The example of a teacher who is continually insubordinate and who refuses to recognize constituted authority may seriously affect the discipline in a school, impair its efficiency, and teach children lessons they should not learn. Such conduct may unfit a teacher for service in a school even though her other qualifications may be sufficient. "Book learning" is only a phase of the important lessons a child should learn in a school.'

"  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"In *Goldsmith* v. *Board of Education, supra,* 66 Cal.App. 157 [225 P. 783], it was held that a teacher advocating before his class the election of a particular candidate for the office of county superintendent of schools was guilty of 'unprofessional conduct.' The fact that the term 'unprofessional conduct' is not defined by statute authorizing the dismissal of a teacher (Ed. Code, § 13521) does not render it void for uncertainty. As was said in the *Goldsmith* case at page 168: '. . . the calling [of a teacher] is so intimate, its duties so delicate, the things in which a teacher might prove unworthy or would fail are so numerous that they are incapable of enumeration in any legislative enactment . . . the teacher is entrusted with the custody of children and their high preparation for useful life. His habits, his speech, his good name, his cleanliness, the wisdom and propriety of his unofficial utterances, his associations, all are involved. His ability to inspire chldren and to govern them, his power as a teacher, and the character for which he stands are matters of major concern in a teacher's selection and retention. How can all of these things be provided for and offenses against them be particularly specified in a single statute?' "

Turning to the phrases "immoral conduct" and "evident unfitness for service," these terms as used in the Education Code are to be construed according to their common and approved usage having regard for the context in which the Legislature used them. (Ed. Code, § 10; 23 Cal.Jur., § 122, p. 745; see *Board of Education* v. *Swan, supra,* 41 Cal.2d 546, 553.)

Of assistance in the interpretation of the phrase "immoral conduct" is the case of *Board of Education* v. *Weiland,* 179 Cal.App.2d 808, at page 811 [4 Cal.Rptr. 286], which cited with approval *Orloff* v. *Los Angeles Turf Club,* 36 Cal.2d 734, at page 740 [227 P.2d 449], wherein the Supreme Court quoted with approval the following from Words and Phrases, permanent

edition, volume 20, pages 159-160:

" 'The term "immoral" has been defined generally as that which is hostile to the welfare of the general public and contrary to good morals. Immorality has not been confined to sexual matters, but includes conduct inconsistent with rectitude, or indicative of corruption, indecency, depravity, dissoluteness; or as wilful, flagrant, or shameless conduct showing moral indifference to the opinions of respectable members of the community, and as an inconsiderate attitude toward good order and the public welfare.' " (*Board of Education* v. *Weiland, supra,* p. 811.)

In *Morrison* v. *State Board of Education,* 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 175], the Supreme Court adopted the *Orloff* standard of immorality for a teacher and held that immoral conduct cannot be the basis for removal of a teacher unless that conduct indicates the teacher is unfit to teach.

Insofar as the phrase "evident unfitness" is concerned, the parties refer us to dictionary definitions in which "evident" is defined in Webster's Collegiate Dictionary as "Clear to the vision and understanding," (Webster's Collegiate Dict., 7th ed. p. 288), and "unfit" as defined in the same tome at page 968, as "not fit; not adapted to a purpose, unsuitable; incapable; incompetent; and physically or mentally unsound." The parties further refer us to a definition of the word "unfit" in California Words, Phrases and Maxims, page 440, as in general "unfit" means "unsuitable, incompetent and not adapted for a particular use or service."

Applying the above rules, we proceed to a discussion of the various charges.

## I.

### ■ THE TEARING OUT OF THE LOUD SPEAKER.

The public address system served three purposes, (1) as the announcement system for the college, (2) as a fire alarm, and (3) as a method of signalling the commencement and cessation of each class period by broadcasting an electrical tone.

The system was defective, troublesome and was eventually removed.

Whatever might be said of the defendant's conduct in this incident, we do not find it to be immoral.

The incident does, however, have a direct bearing on the issue of "evident unfitness."

While most business and professional men have had the frustrating experience of breaking in a new building or facility, and some sympathy may be engendered for the defendant's annoyance with the faulty system, this

cannot excuse his removal of the loud speaker. The bell system, faulty though it was, was an integral part of the communication system of the school. In addition, it was a vital part of the fire alarm system. It served an essential purpose. Its removal by the defendant was highly improper—regardless of his annoyance. While we do not find fault with expression of displeasure with this apparatus per se, and are sensitive to defendant's desire to maintain the academic atmosphere of his classroom, we cannot condone the method used to express his dissatisfaction. His actions in this regard posed a potential danger to the safety of his students. Thus, we hold that this incident may be considered evidence of "evident unfitness for service."

## II.

■ HIS REFERENCE TO THE BELL SYSTEM AS SOUNDING LIKE A WORN OUT PHONOGRAPH IN A WHOREHOUSE AND THE NUMEROUS REFERENCES TO WHORE AND WHOREHOUSES THROUGHOUT THE YEAR.

Were this an elementary school, these charges might bear more careful scrutiny. However, the defendant was teaching at a junior college level and while the use of the words may have shown bad taste and vulgarity,[1] we cannot find that these charges constitute or are evidence of immorality. Standing by themselves, they do not constitute "evident unfitness." However, the incidents could be considered by the trial judge with all of the other charges in his finding of "evident unfitness." Eventually, vulgarity, while not rising to the standards of immorality, can have a bearing on the fitness of a teacher to teach—even on a junior college level.

## III.

■ THE INCIDENT OF THE DEFENDANT ADDRESSING HIMSELF TO THE MEXICAN-AMERICAN STUDENTS IN THE PRESENCE OF THE REST OF THE CLASS AND WARNING THEM OF SUPER-SYPHILIS IN SAN LUIS.[2]

Again, while we find this incident to be in bad taste, we can find in it no evidence of immorality.

However, again, it does bear on the trial court's finding of "evident unfitness." While there is no direct evidence of embarrassment felt by the Mexican-American students at being singled out by a charge that venereal disease was rampant in their culture, such a finding can be inferred from the record. While we do not contend that the subject matter of defendant's

---

[1]On one occasion he referred to the public address system as sounding like a constipated elephant.

[2]San Luis is a hamlet on the Mexican border.

remarks is necessarily inappropriate in a classroom at the junior college level, so long as he chose to discuss the subject, we would hope that as a professional man he would approach it from a more mature and professional manner. Blurting it out in the class was not only humiliating and embarrassing to the Mexican-Americans, it again showed a lack of restraint and a tendency to vulgarity and bad taste which the trial court could validly consider on the subject of "evident unfitness."

## IV.

### ■ THE INCIDENT OF THE GESTURE OF LICKING THE WALL WITH HIS TONGUE IN AN UP AND DOWN MANNER.

Here, we have passed the limits of bad taste and vulgarity. The defendant's contention that he was imitating a deaf mute ordering an ice cream cone was an insult to the intelligence of the trial judge. Rather, it is obviously a gesture which was intended to describe a person who would rather curry favor with his superiors than to do his duty and was specifically directed to the County Superintendent of Schools. The defendant's explanation that, in this context, he meant "face licking" was obviously not accepted by the trial court nor do we so accept it. Quite to the contrary, this expression means in common parlance licking an entirely different portion of the anatomy. It was obviously so intended by the defendant and so understood by his college-age students. This obscene incident indicates both "immorality" and "evident unfitness."

Defendant attempts to bring himself within the doctrine of *Los Angeles Teachers' Union* v. *Los Angeles City Board of Education,* 71 Cal.2d 551 [78 Cal.Rptr. 723, 455 P.2d 827], and *Board of Trustees* v. *Owens,* 206 Cal.App.2d 147 [23 Cal.Rptr. 710], and in so doing wraps himself in the mantle of free speech and the right to dissent and to differ with and criticize the superintendent of schools. Without the benefit of these cases it cannot be questioned that the defendant had a right as a teacher and a citizen to differ with, to dissent from, and to criticize the superintendent. However, the means of expression used puts him far outside the protection of the First Amendment or the above cases. In *Owens,* the teacher had written letters to a newspaper criticizing the school administration. In *Los Angeles Teachers' Union,* the teachers were trying to circulate a petition among themselves during their lunch hours. In each case the court held that the teachers' actions were constitutionally protected so long as they did not result in any disruption or impairment of discipline or the teaching process or substantially disrupt or materially interfere with school activities. In this case the activities of appellant in the presence of his students were dis-

ruptive, an impairment of the teaching process, and not an example of the responsible dissent which should be fostered in the classroom.

This incident is evidence of both "immorality" and "evident unfitness."

## V.

■ Referring to the Walls of the School as Looking as Though Someone Had Peed on Them and Then Smeared Them with Baby Crap.

The record indicates that this was a class made up of both males and females. We assume that each of them at that age was familiar with the words used. Again, we do not deny the defendant's right to criticize. Nevertheless, a teacher has a responsibility to respect the feelings and sensitivities of the members of his class and to conduct himself with a certain degree of rectitude. His behavior in this incident is inexcusable in the presence of his students.

His explanation that he had heard remarks made by the students describing the walls in other four letter words by which we infer that he refers to four letter words of ancient origin which describe body waste, both solid and liquid, and that he cleaned up their use of these words by his use of the words pee and crap, falls rather flat. We have no desire to become involved in the controversy between the Puritan Ethic and the Age of the Four Letter Word. We merely observe that while there may be a time and a place for everything, a classroom, even on a junior college level, is not the time or the place for the use of this language. While we do not consider the language used to be immoral, its obvious vulgarity was evidence of "evident unfitness."

The defendant points out that the students' reaction to this statement was that they thought it was funny. Of this, we have no doubt. To borrow from the language of show business, we may well assume that the tearing out of the public address system "laid them in the aisles" and the wall licking incident "brought down the house." However, while humor is an important part of a stimulating and entertaining presentation, a coeducational classroom does not appear to be the place for the barrack's type of language used by this defendant.

The plaintiff was quite within its rights in its determination that the type of instructional process displayed by the defendant was improper and that it should not be forced to continue with this type of an educational process or with this teacher.

All of the incidents taken in the aggregate serve as a substantial basis for the trial court's determination that the charges of "immoral conduct" and "evident unfitness for service" were true and constituted cause for dismissal.

Judgment affirmed.

Kerrigan, J., and Gabbert, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 15, 1970.