[No. B030432. Second Dist., Div. Five. June 14, 1989.]

PAMMI BEVLI, Plaintiff and Respondent, v.
C. CHESTER BRISCO, Defendant and Respondent;
BOARD OF TRUSTEES OF THE RIO HONDO COMMUNITY
COLLEGE DISTRICT et al., Appellants and Real Parties in Interest.

COUNSEL

Ochoa & Sillas, Herman Sillas and Gary M. Mandinach for Appellants and Real Parties in Interest.

Lawrence B. Trygstad for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

OPINION

ROWEN, J.*—Real parties in interest, the Rio Hondo Community College District and the Board of Trustees of the Rio Hondo Community College District (collectively referred to as the District), appeal from a judgment which ordered the issuance of a peremptory writ of mandate compelling the District to reemploy and pay back wages to plaintiff, a tenured employee. We reverse the judgment and remand the matter to the trial court to reconsider the matter in accordance with the principles stated herein.

FACTUAL AND PROCEDURAL HISTORY

Beginning in 1966, plaintiff Dr. Pammi Bevli was employed as a certificated chemistry instructor by the District. In 1969, plaintiff gained tenure and was promoted to full professor. Subsequently, as a result of complaints received regarding her performance, the chairman of the District's physical sciences department undertook an investigation and evaluation of plaintiff. That investigation ran from 1977 through 1979. On or about July 18, 1979, based on the chairman's negative conclusions, the District notified plaintiff in writing that she would be subject to continued evaluations by the administration and that she would face the possibility of termination if no improvement were forthcoming. Plaintiff then took a medical leave for the fall semester of 1979. When she advised the District that she intended to return to her teaching duties for the spring term of 1980, the District notified her that upon her return, pursuant to the notice previously served,

_____
*Assigned by the Chairperson of the Judicial Council.

she would continue to be subject to administrative evaluation. Plaintiff returned to her teaching duties from February 4, 1980, to April 17, 1980, during which time she was, once again, adversely evaluated. In September 1980, the District served plaintiff with a notice of suspension and dismissal, pursuant to Education Code section 87732,[1] citing allegations to support charges of incompetency, evident unfitness for service and persistent refusal to obey rules and regulations. The allegations against plaintiff can be generally summarized as: (1) lack of knowledge of the subject matter, (2) an inability to relate the subject matter to students in a clear and precise manner, (3) consistent lack of familiarity with and implementation of proper and common laboratory practices, (4) ineffectiveness in developing and maintaining a classroom environment conducive to learning, and (5) a demonstrated inability to work harmoniously with fellow colleagues.

Plaintiff filed a timely objection to the District's decision and, in 1981, a mutually agreed upon arbitration hearing was held before defendant C. Chester Brisco (Brisco) pursuant to Education Code sections 87674[2] and 87675.[3] Initially, the arbitrator determined that the written notice issued by the District in 1979 and the written statement of charges which brought the

---

[1] Before its amendment in 1981, Education Code section 87732, provided that a regular employee of a community college district may only be dismissed for:

"(a) Immoral or unprofessional conduct.

"(b) Commission, aiding, or advocating the commission of acts of criminal syndicalism, as prohibited by Chapter 188, Statutes of 1919, or in any amendment thereof.

"(c) Dishonesty.

"(d) Incompetency.

"(e) Evident unfitness for service.

"(f) Physical or mental condition unfitting him to instruct or associate with children.

"(g) Persistent violation of or refusal to obey the school laws . . . or . . . regulations.

"(h) Conviction of a felony or of any crime involving moral turpitude.

"(i) Conduct specified in Section 1028 of the Government Code added by Chapter 1418 of the Statutes of 1947.

"(j) Violation of any provision in Sections 7000 to 7007, inclusive.

"(k) Knowing membership by the employee in the Communist Party." (Stats. 1976, ch. 1010, § 2, operative Apr. 30, 1977.)

[2] Education Code section 87674 states: "Within 30 days of the receipt by the district governing board of the employee's demand for a hearing, the employee and the governing board shall agree upon an arbitrator to hear the matter. When there is agreement as to the arbitrator, the employee and the governing board shall enter into the records of the governing board written confirmation of the agreement signed by the employee and an authorized representative of the governing board. Upon entry of such confirmation, the arbitrator shall assume complete and sole jurisdiction over the matter."

[3] Education Code section 87675 states, in pertinent part: "The arbitrator shall conduct proceedings in accordance with the provision of Chapter 5 (commencing with Section 11500) of Part 1, Division 3, Title 2, of the Government Code . . . . He shall determine whether there is cause to dismiss or penalize the employee. If he finds cause, he shall determine whether the employee shall be dismissed and determine the precise penalty to be imposed, and he shall determine whether his decision should be imposed immediately or postponed pursuant to Section 87672."

matter to arbitration did not comply with the requirements of Education Code section 87734[4] and thus did not consider the District's charges against plaintiff of alleged incompetency.

During the nine days of hearing, plaintiff was asked to perform scientific experiments and was questioned on her academic knowledge. Thereafter, based upon the evidence presented, Brisco ruled that the District had cause to dismiss plaintiff for "evident unfitness for service." The arbitrator noted, specifically, that plaintiff was unable to define certain words, explain basic concepts of chemistry or properly conduct certain chemistry experiments, and concluded that "she is unable to employ knowledge of the subject matter at a professional level. Even at a subprofessional level she is inadequate, unless she has complete written instructions or she has recently practiced with the laboratory equipment."

Plaintiff subsequently filed a petition for a writ of mandate pursuant to Code of Civil Procedure section 1094.5 to set aside the arbitrator's findings. The superior court rendered judgment for plaintiff after an independent review of the evidence and ordered that plaintiff be reinstated as an employee of the District. The District appealed and, in 1985, this court reversed the judgment because of the trial court's failure to support its conclusions with a written statement of decision and ordered a trial de novo of plaintiff's case. (*Bevli* v. *Brisco* (1985) 165 Cal.App.3d 812 [212 Cal.Rptr. 36].)[5]

In May 1987, the case was retried, with the parties stipulating to the admission of the evidence previously introduced at the arbitration and at the first trial. No further evidence was offered.

The trial court again rendered judgment for plaintiff, finding that the preponderance of the evidence did not support the charges of evident unfitness for service. After issuing a statement of decision, judgment was entered granting a peremptory writ of mandate ordering the District to reemploy plaintiff if and when she was physically able to perform her duties and to pay her back compensation in accordance with the law. This appeal by the District followed.

---

[4] If the causes specified for dismissal under Education Code section 87732 are either "unprofessional conduct" or "incompetency," section 87734 requires that 90 days written notice shall be given to the employee, specifying the nature of the unprofessional conduct or incompetency, "with such specific instances of behavior and with such particularity as to furnish the employee an opportunity to correct his faults and overcome the grounds for such charge."

[5] This court also held that: (1) the District could properly plead multiple causes for dismissal based wholly or partially on common allegations and that (2) the arbitrator was entitled to determine the issues of evident unfitness and failure to follow regulations after disallowing the charge of incompetency. (165 Cal.App.3d at pp. 816-819.)

## Discussion

### A. *Evident Unfitness for Service*

While many cases have considered the sufficiency of allegations to support a charge of "evident unfitness to serve" as a ground for teacher dismissal, the term has eluded specific definition. █ Recognizing that one court looked to the dictionary definitions of the words in that phrase for direction (*Palo Verde etc. Sch. Dist.* v. *Hensey* (1970) 9 Cal.App.3d 967, 971 [88 Cal.Rptr. 570]),[6] we find that courts generally have undertaken review on a case by case approach with the attitude that "the term 'evident unfitness for service' should not be given a definite technical meaning and that a court should not arbitrarily find that it is subsumed under some set formula." (*Oakland Unified Sch. Dist.* v. *Olicker* (1972) 25 Cal.App.3d 1098, 1108 [102 Cal.Rptr. 421].)

The trial court is not, however, left without any guidance to aid it in determining whether or not the evidence presented supports dismissal for "evident unfitness" to teach. The standards set forth in *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 375] provide the definitive test to be applied in judging whether a teacher's deportment constitutes immoral or unprofessional conduct or evident unfitness to teach. (*San Dieguito Union High School Dist.* v. *Commission on Professional Competence* (1982) 135 Cal.App.3d 278, 284 [185 Cal.Rptr. 203].) *Morrison* holds that the following factors must be considered in evaluating whether the teacher's behavior constitutes unfitness to teach: (1) the likelihood of recurrence of the questioned conduct; (2) the extenuating or aggravating circumstances, if any; (3) the effect of notoriety and publicity; (4) any impairment of teacher-student relationships; (5) any disruption of educational process; (6) motive; and (7) the proximity or remoteness in time of the conduct. (1 Cal.3d at p. 230; *Bassett Unified School Dist.* v. *Commission on Professional Competence* (1988) 201 Cal.App.3d 1444, 1453 [247 Cal.Rptr. 865].)

The *Morrison* factors must be analyzed in all cases of teacher discharge for evident unfitness. "*Morrison* is followed by California courts for good reason. In the absence of a consideration of all the evidence and a reflection of the factual base on which to apply the *Morrison* standards, the trial court's finding becomes little more than an abstract moral judgment. . . .

---

[6]The court in *Hensey* considered, at the parties' urging, the dictionary definitions of the terms " 'evident' " as " '[c]lear to the vision and understanding' " and " 'unfitness' " as " 'not fit; not adapted to a purpose; unsuitable; incapable; incompetent; and physically or mentally unsound' " or " 'unsuitable, incompetent and not adapted for a particular use or service.' " (9 Cal.App.3d at p. 972.)

Without the *Morrison* standards, 'evident unfitness to teach' would be vulnerable to such a broad application virtually every teacher in the state could be subject to discipline and discharge. [Citation.]" (*San Dieguito Union High School Dist.* v. *Commission on Professional Competence, supra,* 135 Cal.App.3d at pp. 284-285.)

B. *The Trial Court's Statement of Decision*

In its statement of decision, the trial court attempted to define "evident unfitness for service," as distinguished from incompetency, as follows: ". . . evident unfitness for service, is an act or omission, which by its very definition cannot be corrected or improved upon, such as a teacher's removal of a public address system from the classroom, *Palos [sic] Verdes Unified School District* v. *Hensey* (1970) 9 Cal.App.3d 967, or a male junior college teacher parked with an undressed female student, and who assaulted a police officer and attempted to escape (*Board of Trustees of Compton Junior College District* v. *Stubblefield* (1977) 16 Cal.App.3d 820). Thus, incompetency means conduct which could be corrected. Moreover, evident unfitness for service refers to a deficiency that could not be corrected in a reasonable time and perhaps could not be corrected at all. Evident unfitness for service includes the type of conduct which, even if not repeated, would be sufficient to establish cause to terminate an employee."

■ The trial court, relying on the *Hensey* and *Stubblefield* decisions, attempted to create a set formula despite the proscription of *Olicker*. (25 Cal.App.3d at p. 1108.) The trial court's formula was based solely upon the "remedial nature" of the behavior in question, i.e., only if the teacher's conduct or performance could not be remedied would such action qualify as "evident unfitness for service." Neither *Hensey* nor *Stubblefield,* however, set forth such a test. *Hensey,* decided shortly after *Morrison,* evaluated the teacher's fitness in light of the potential danger resulting from his behavior to the safety of his students, the many incidents of bad taste and vulgarity, the disruptive effect of his obscene gestures, and his insensitivity and disrespect for the feelings of students. (9 Cal.App.3d, at pp. 974-975.) In *Stubblefield,* the court, referring specifically to *Morrison,* found the likelihood of the discharged teacher engaging in untoward conduct, and the resulting adverse publicity, to be dispositive of the issue of fitness to serve. (16 Cal.App.3d at pp. 826-827.) Here, unlike those cases discussed above, there is no indication whatsoever that the trial court considered any criteria other than the remediability of the plaintiff's behavior.

Contrary to plaintiff's contentions, we find no support for the "remediability" test in *Pittsburg Unified School Dist.* v. *Commission on Professional Competence* (1983) 146 Cal.App.3d 964 [194 Cal.Rptr. 672]. In *Pittsburg,*

the court merely pointed out that the reason for the notice requirement in incompetency or unprofessional conduct cases is to allow the employee the opportunity to correct his behavior.[7] (146 Cal.App.3d at p. 975.) It does not necessarily follow that because notice is not required in fitness cases that an inability to correct the complained about behavior, i.e., that it cannot be remedied or improved upon within a reasonable time, is the definitive factor in such matters.

Because of this failure to review the evidence in light of the *Morrison* criteria,[8] we are compelled to reverse the trial court's ruling and remand for retrial. (See *Bassett Unified School Dist.* v. *Commission on Professional Competence, supra,* 201 Cal.App.3d at p. 1454.)

## C. *Exclusion of Workers' Compensation Report*

As an additional ground for reversal, the District contends that the trial court erred in excluding evidence that plaintiff had settled a workers' compensation claim attributable to the employment in issue here. The District complains further that a doctor's report, attached to the Workers' Compensation Appeals Board (WCAB) order approving the settlement, which indicated that plaintiff was not able to function in a classroom setting, should have been admitted into evidence. ■ The District claims that the doctor's report renders the appeal moot, citing *Leithliter* v. *Board of Trustees* (1971) 12 Cal.App.3d 1095 [91 Cal.Rptr. 215], in which a similar action was dismissed for mootness after a teacher voluntarily resigned. In the matter before us now, the trial judge excluded both the doctor's report and evidence of the settlement pursuant to Evidence Code section 352.[9]

Unlike the factual situation in *Leithliter,* however, there is no evidence here of resignation. The report in issue here contained a doctor's opinion that plaintiff was not capable of performing in a classroom setting, but that is not the equivalent of proof that plaintiff would not be returning to work. The report does not render this action moot.

The exclusion of the workers' compensation order settling plaintiff's claim does, however, raise a thorny issue with respect to the trial court's

---

[7] In *Pittsburg,* the applicable notice requirement was mandated by Education Code section 44938, which is the equivalent of section 87734 for local administration in elementary and secondary schools.

[8] At best, the trial court's "test" focuses on only one component of the "likelihood of recurrence" factor prescribed by *Morrison*.

[9] Evidence Code section 352 provides as follows: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

award of backpay. ■ The measure of recovery of a wrongfully discharged employee is the amount of salary he or she would have earned plus other benefits, less the amount which the employer proves the employee has earned or might have earned from other employment. (*California School Employees Assn.* v. *Personnel Commission* (1973) 30 Cal.App.3d 241, 255 [106 Cal.Rptr. 283]; *Fugitt* v. *City of Placentia* (1977) 70 Cal.App.3d 868, 876 [139 Cal.Rptr. 123].)

The District is not entitled to deduct any amounts from backpay owed for periods plaintiff was unable to return to work subsequent to her termination. (*Ahlstedt* v. *Board of Education* (1947) 79 Cal.App.2d 845, 857 [180 P.2d 949]; *Carroll* v. *Civil Service Com.* (1973) 31 Cal.App.3d 561, 567 [107 Cal.Rptr. 557].) In framing its order, however, the trial court may take into account that portion of the workers' compensation benefits plaintiff received because of her inability to return to the classroom setting as a teacher. Although we cannot discern from the record what the basis of either the workers' compensation claim or settlement was, it does appear that benefits may have been received by plaintiff which took into consideration her incapacity to teach and her receipt of such benefits may be wholly inconsistent with an award of backpay.

The obligation to reimburse a wrongfully discharged employee may be mitigated by deducting compensation or benefits actually received by the employee that are inconsistent with the original employment, i.e., earnings from night or weekend work which would not have been inconsistent with school employment, may not be deducted. It follows, therefore, that if plaintiff has already received benefits, through her workers' compensation claim, which took into account her inability to teach, that portion of the total settlement which compensated her for such loss may be considered as an offset against any back pay the District is ordered to pay plaintiff. (See *California School Employees Assn.* v. *Personnel Commission, supra,* 30 Cal.App.3d at p. 255; cf. *Currieri* v. *City of Roseville* (1975) 50 Cal.App.3d 499, 508 [123 Cal.Rptr. 314].) If, upon retrial, it is determined that plaintiff was wrongfully discharged, the trial court should take into consideration plaintiff's workers' compensation claim, the terms of its settlement, all medical and psychiatric records submitted to the WCAB and apportion the benefits received to determine the setoff considerations, if any, appropriate to this matter.

## Disposition

For the preceding reasons, we reverse the judgment of the trial court and remand for retrial in accordance with the directions set forth herein. Each party to bear own costs.

Lucas, P. J., and Boren, J., concurred.

The petition of respondent Bevli for review by the Supreme Court was denied August 30, 1989.