# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JAMES R. HULL, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No. N21A-06-004 WCC |
| | ) | |
| THE BOARD OF EDUCATION OF | ) | |
| BRANDYWINE SCHOOL | ) | |
| DISTRICT, | ) | |
| | ) | |
| Appellee. | ) | |

Submitted: April 13, 2022
Decided: August 1, 2022

**Upon Mr. Hull's Appeal from the Board of Education – AFFIRMED**

**MEMORANDUM OPINION**

Anthony N. Delcollo, Esquire, Offit Kurman, P.A., 222 Delaware Avenue, Suite 1105, Wilmington, Delaware 19801.  Attorney for Appellant.

James H. McMackin, III, Esquire, Morris James LLP, 500 Delaware Avenue, Suite 1500, P.O. Box 2306, Wilmington, Delaware, 19899-2306.  Attorney for Appellee.

**CARPENTER, J.**

1

Appellant James R. Hull ("Appellant" or "Hull") files this appeal from the Board of Education of Brandywine School District's ("Appellee" or the "Board") decision to terminate Hull's employment as the driver's education teacher at Concord High School. The Court finds the Board's decision is supported by substantial evidence and is free from legal error. Accordingly, the Board's decision is **AFFIRMED**.

## I.      Factual & Procedural Background

Hull worked at Concord High School for approximately twenty years as a driver's education teacher.[1] Due to the COVID-19 pandemic, schools faced unprecedented challenges and, specifically, the driver's education program at Concord High School was shut down from March to August of 2020, and again from December of 2020 to January of 2021.[2] These shutdowns caused a backlog of students requiring driving hours to achieve their driver's licenses.[3] To address this issue, Hull and another teacher were directed to focus solely on working in the field with students to ensure they accumulated the requisite driving hours.[4] A different teacher was assigned to conduct the classroom portion of the course.[5]

---

[1] Tr. of Termination Hr'g James Hull May 12, 2021, D.I. 13, at 218 (Sept. 3, 2021).
[2] *Id*. at 31.
[3] *Id*.
[4] *Id*. at 32
[5] *Id*.

2

By January 6, 2021, all school staff had been directed by the union, superintendent, and the principal to return in the buildings and had received multiple communications to that effect.[6] But on February 9, 12, 16, 22, and 23, of 2021 ("February 2021 Dates"), Hull signed into work but shortly thereafter left without completing any work or driving any students.[7] Hull represented that he worked from 6 a.m. to 3 p.m., but security footage showed that he left the building no later than 7:24 a.m. on those days and went home.[8] Furthermore, Hull admitted that he did not drive students nor provide any other services to Brandywine School District (the "District") on those days, although receiving his regular salary.[9]

On March 19, 2021, Hull received a letter from the District informing him that he was being terminated as a teacher effective April 20, 2021, due to Immorality, Neglect of Duty, and Misconduct in Office.[10] On March 25, 2021, Hull requested a hearing on the proposed termination and sought various relevant information and documents.[11]

On May 12, 2021, the Board conducted a hearing on Hull's proposed termination.[12]

---

[6] *Id*. at 139, 159.
[7] Termination Hr'g Report May 17, 2021, D.I. 8, 6 (July 19, 2021).
[8] *Id.*
[9] *Id.*
[10] Termination Notice Sent to James Hull on Mar. 16, 2021, D.I. 8, R. at 127 (July 19, 2021).
[11] *Id*. at 129.
[12] Tr. of Termination Hr'g at 1.

The following witnesses were called:

- Timothy Hamberger—a Driver's Education teacher at Concord High School,

- Mark Mayer—the principal at Concord High School,

- Lisa Brooks—the Department Chair for the Driver's Education Program,

- Francis Sarro—a Driver's Education teacher at Concord High School,

- Delethia McIntire—the Director of Human Resources, and

- James Hull—the Appellant.[13]

After a comprehensive review of the evidence presented at the hearing, the Hearing Officer found that Hull's conduct constituted immorality, neglect of duty, and misconduct in office and recommended that Hull be terminated as a teacher.[14]

In making that determination, the Hearing Officer found that Hull was aware that he was required to return to the building in person after January 11, 2021, but did not provide any services to the District on the February 2021 Dates, although signing in and out of work and collecting his salary.[15] Further, the Hearing Officer found that although some of his duties were reduced to assist with the back log of

---

[13] Termination Hr'g Report at 3-5.
[14] *Id*. at 9.
[15] *Id*. at 8-9.

driving hours, Hull was required to "assist his co-workers and the District in achieving its goals though professional teamwork."[16]

First, the Hearing Officer found that Hull acted immorally when he knowingly accepted salary from the District for services rendered when he failed to provide any services on the February 2021 Dates.[17] The Hearing Officer explained that "[i]nstead of remaining in the building and offering assistance to his co-workers or students he went home. As a result, his co-workers continued to remain overwhelmed to provide the necessary services to the students during a global pandemic."[18]

Next, the Hearing Officer found that Hull neglected his duties when he returned home instead of "remain[ing] in the building…[to] work on lesson plans, assist other teachers, and provide testing to his students."[19]

And finally, the Hearing Officer found that Hull "engaged in misconduct when he falsified District records by misrepresenting, he was in the building and/or working from 6 a.m. to 3 p.m. on [the February 2021 Dates], when he admittedly failed to remain in the building and instead went home and provided no services to the District on those days."[20]

---

[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*

5

The Board adopted the Hearing Officer's recommendation on June 6, 2021, and Hull's termination was ratified on August 19, 2021.[21]

Hull filed a timely appeal to this Court and the matter has been fully briefed. In sum, Hull argues that there was no substantial evidence in the record to support the Board's termination of Appellant for immorality, neglect of duty, and misconduct in office and the Hearing Officer's recommendation must be reversed for errors of law in misapplying relevant legal standards.

## II.   Standard of Review

On appeal from an administrative board, the Superior Court must determine if the Board's factual findings are supported by substantial evidence in the record and free from legal error.[22] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[23]

The Board's duty is "to weigh evidence, determine the credibility of witnesses, resolve issues of fact and draw its conclusions and inferences therefrom."[24] And, the Court determines "whether or not the findings of the Board are supported by substantial evidence."[25] "If there was presented substantial and

---

[21] Sch. Bd. Meeting Minutes from June 6, 2021, D.I. 8, R. at 320, (July 19, 2021); Notice of Appeal, D.I. 1, 1 (June 17, 2021).
[22] *Fowler v. GT Wilmington USA*, 2022 WL 1693663, at *2 (Del. Super. Ct. May 24, 2022).
[23] *Id.* (quoting *Histed v. E.I. duPont de Nemours & Co.*, 621 A.2d 340, 342 (Del. Mar. 10, 1993)).
[24] *Mulstay v. Bd. of Educ. Of Indian River Sch. Dist.*, 2003 WL 23219646, at *6 (Del. Super. Ct. Dec. 8, 2003).
[25] *Id.*

credible evidence to support the charges and a fair administrative hearing was had, the Superior Court cannot substitute its judgment for the judgment of the school authorities."[26]

"The Delaware Supreme Court has cautioned that '[c]ourts should be reluctant to set aside findings of a Board of Education after public hearings unless the record clearly contains no substantial evidence supporting findings of the Board.'"[27]

## III. Discussion

Section 1411 of Title 14 of the Delaware Code delegates power to school boards to terminate certified teachers for specific reasons.[28] In this case, the Court must decide whether the Board's decision to terminate Hull's employment on the grounds of immorality, neglect of duty, and misconduct in office pursuant to Section 1411 was supported by substantial evidence in the record and whether the Board made any errors of law.

### A. Immorality

First, Appellant argues that the Hearing Officer's report to the Board was conclusory and offers no explanation regarding how Appellant's actions impaired his effectiveness or made him unfit as a teacher.[29] Conversely, the Board asserts that

---

[26] *Id.*
[27] *Id.*
[28] 14 *Del. C.* §1411.
[29] Appellant's Opening Br., D.I. 16, 5 (Sept. 24, 2021)(hereinafter "Appellant's Br.").

Appellant's conduct in engaging in falsifying employment records was immoral and sets an improper standard for students, who are impressionable.[30]

Immorality is not defined in the Code but is a broad term that refers to "the common mores of society" and has been construed as "such immorality as may reasonably be found to impair the teacher's effectiveness by reason of his [or her] unfitness or otherwise."[31]  In *Lehto v. Board of Education of Caesar Rodney School District*, the Delaware Supreme Court held that the proper inquiry of immoral conduct considers the nexus between "how the conduct may affect the teacher's ability to teach," which includes "the teacher's ability to maintain discipline in the classroom, the effect the act will have on the teacher's students, and the attitudes of the teacher's [students'] parents."[32]

In *Mulstay v. Board of Education of Indian River School District*, the Court considered other jurisdiction's definitions of immorality.[33]  For example, in Pennsylvania, immorality is defined as "such a course of conduct as offends the morals of the community and is a bad example to the youth whose ideals a teacher

---

[30] Appellee The Bd. of Educ. of Brandywine Sch. Dist.'s Answ. Br. in Opp'n to the Appeal, D.I. 17, 13 (Oct. 8, 2021)(hereinafter "Appellee Br.").
[31] *Skripchuk v. Austin*, 379 A.2d 1142, 1143 (Del. Super. Ct. Oct. 17, 1977).
[32] *Lehto v. Bd. of Educ. of Caesar Rodney Sch. Dist.*, 962 A.2d 222, 227 (Del. Dec. 2, 2008).
[33] *Mulstay*, 2003 WL 23219646, at *6.

is supposed to foster and elevate."[34] And, in California, immoral behavior is "that which is hostile to the welfare of the general public and contrary to good morals."[35]

The Court finds that the evidence in this case is sufficient to sustain the finding of the Board that Hull was guilty of immorality. Hull carelessly falsified his timesheets and collected pay he did not earn, while leaving his co-workers to navigate and handle extra duties produced by the pandemic at Concord High School. Such conduct has an improper impact on the school community and specifically, his students, as it demonstrates that Hull acted selfishly and dishonestly.

Moreover, Appellant also contends that the immorality finding is based on inadmissible hearsay evidence which does not constitute substantial evidence.[36] Specifically, Ms. Lisa Brooks, the Department Chair for Driver's Education, testified that she had received complaints regarding Hull's responsiveness to students and parents.[37] Brooks also recalled that Hull told her not to email or call, and that he disconnected his phone in his room.[38]

---

[34] *Id*. (quoting *Dohanic v. Commw. of Pa., Dept. of Educ.*, 533 A.2d 812, 814 (Pa. Commw. 1987)).

[35] *Id*. (quoting *Palo Verde etc. Sch. Dist. v. Hensey*, 9 Cal.App.3d 967, 972 (Cal. Ct. App. 1970)).

[36] *Johnson v. Unemp't Ins. Appeals Bd.*, 2015 WL 3508092, at *2 (Del. Super. Ct. June 3, 2015).

[37] Termination Hr'g Report at 4.

[38] *Id*.

The rules and regulations governing Board hearings permit hearsay evidence to be considered, so long as a decision is not made solely based on that evidence.[39] Since it is clear that the Board considered more than hearsay evidence, such as direct testimony from Hull and other teachers, falsified timesheet records, and video surveillance, the Court finds there is substantial evidence to support the Board's finding of Hull's immorality as described above and is free from legal error.

B. Neglect of Duty

Next, Appellant argues that he did not neglect his duty because he fulfilled his obligations under the instructions provided and did not fail to perform an assigned duty or refuse to follow any instruction issued by a supervisor.[40] The Board contends that Hull failed to provide a myriad of duties, including returning to work, preparing lesson plans and related tasks, and assisting other teachers and staff with their heavy workload.[41]

Neglect of Duty is defined as "the failure to do something that is required to be done in connection with a person's employment."[42] The *Morabito* court explained that a finding of neglect of duty can be based on duties not specifically

---

[39] *See Bethel v. Board of Educ. of Capital Sch. Dist.*, 2009 WL 4545208, at *4 (Del. Dec. 4, 2009)("[T]he Board is not bound by the formal rules of evidence, it may admit and consider hearsay evidence, provide that such evidence is not the sole basis of the Board's decision.").
[40] Appellant Br. at 7-8.
[41] Appellee Br. at 11-12.
[42] *Morabito v. Bd. of Educ. of Smyrna Sch. Dist.*, 2011 WL 1887548, at *2 (Del. May 16, 2011).

assigned or contained in writing.[43]  In that case, the teacher neglected his duties by failing to prepare lesson plans, engage and motivate his students, adequately evaluate student capabilities, and keep administration and student's parents apprised of classroom incidents.[44]  Such failures were deemed to be an oversight of the teacher's duty because they were tasks "required to be done in connection with [his] employment."[45]

Similarly, in this case, there is substantial evidence that Hull failed to perform tasks associated with his employment.  Hull's job description states that some of the essential functions of his job require Hull to, "(8) [c]ommunicate[] with students, other school personnel and parents through various means necessary, (9) [be] an active member of the assigned school community, (10) [a]ll other duties as assigned by the immediate supervisor."[46]

By leaving campus, Hull failed to provide adequate staff support, create lesson plans, and engage with the school community and his students.  The Hearing Officer properly determined that Hull was not "relieved of his responsibility to help his co-workers and the District in achieving its goals through professional teamwork," especially through the pandemic.[47]  Hull is a seasoned teacher with a twenty-year

---

[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] Driver's Educ. Teacher Job Description, D.I. 8, R. at BSD131 (July 19, 2021).
[47] Termination Hr'g Report at 9.

11

tenure, and the Court finds that he should have known that his duties expanded beyond the curated list of students assigned by his immediate supervisor, especially, in light of the dense backlog of students requiring hours. Accordingly, the Court finds substantial evidence to support the Board's finding that Hull neglected his duties.

### C. Misconduct of Office

Finally, Appellant argues that he did not disregard any instructions and completed his assigned tasks, and he did not engage in willful or wanton behavior.[48] Whereas the Board asserts that timecard falsification meets the standard for misconduct in office and such conduct is prohibited by the rules of Hull's employment.[49]

Misconduct is defined as a "transgression of some established and definite rule of action, a forbidden act, a dereliction from duty, unlawful behavior willful in character, improper or wrong behavior."[50] Further, the term embraces acts which the person had no right to perform, acts performed improperly, and failure to act in the face of an affirmative duty to act.[51]

---

[48] Appellant Br. at 9-10.
[49] Appellee Br. at 15-16.
[50] *Mulstay v. Bd. of Educ.*, 2003 WL 23219646, at *8 (Del Super. Ct. Dec. 8, 2003).
[51] *Mack v. Kent Cty. Vocational-Tech. Sch. Dist.*, 1987 WL 11466, at *1 (Del. Super. Ct. May 20, 1987).

Misconduct in office has been found when a teacher acts "consistently contrary to the standard of behavior expected of a teacher."[52] The standard of behavior requires "that teachers shall conduct themselves professionally, be a good role model, and above all else protect the mental and physical safety of their students."[53]

The Court finds that there is substantial evidence to support the Board's conclusion that Hull's conduct arose to misconduct in office. Again, Hull falsified timesheets and received pay for work that he did not do and failed to offer his fellow teachers his cooperation and support. Hull engaged in an ongoing pattern of behavior that was contrary to the standards of behavior expected of an experienced teacher and acted in a way that was unprofessional and adverse to that of a suitable role model. The Board found that Hull's behavior, which included falsifying timesheets, failing to assist co-workers with duties, and improperly returning home during the school day, was enough to find that he was guilty of misconduct of office. This Court agrees. There is no question that a teacher with nearly twenty years of experience would appreciate that clocking in for the day and then leaving without performing any of his professional duties, whether assigned or not, is not reasonable conduct for the profession. It appears that Hull simply decided to take advantage of

---

[52] *Ballard v. Bd. of Educ.*, 1985 WL 188988, at *8 (Del. Super. Ct. 1985).
[53] *Mulstay v. Bd. of Educ. of Indian River School Dist.*, 2003 WL 23219646, at *9 (Del. Super. Ct. Dec. 8, 2003).

the disruption caused by the COVID-19 pandemic to gain some paid free time. Such conduct cannot be condoned and clearly meets the requirements for a finding of misconduct of office. Therefore, the Court finds that there is substantial evidence to support the Board's finding of misconduct in office.

## IV. Conclusion

For the foregoing reasons, Hull's termination by the Board is **AFFIRMED**.

**IT IS SO ORDERED.**

/s/ William C. Carpenter, Jr.
Judge William C. Carpenter, Jr.